911 F.2d 1347
 116 Lab.Cas. P 10,261
 OPERATING ENGINEERS PENSION TRUSTS; Operating Engineers
Health and Welfare Fund; Operating Engineers
Vacation-Holiday Savings Trust; Operating Engineers
Training Trust, Plaintiffs-Appellants-Cross-Appellees,
v.
B & E BACKHOE, INC., Defendant-Appellee-Cross-Appellant.
 Nos. 88-6599, 88-6600.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 6, 1990.
Decided Aug. 14, 1990.
 
 Wayne Jett, Jett & Laquer, Pasadena, Cal., for plaintiffs-appellants-cross-appellees.
 Lloyd C. Ownbey, Jr., Munns, Kofford, Hoffman, Hunt & Throckmorton, Pasadena, Cal., for defendant-appellee-cross-appellant.
 Appeal from the United States District Court for the Central District of California.
 Before HUG, SCHROEDER and HALL, Circuit Judges.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 Pension Trust, the Operating Engineers Health and Welfare Fund, the Operating Engineers Vacation-Holiday Savings Trust, and the Operating Engineers Training Trust ("the Trusts") timely appeal the district court's decision to award the Trusts monetary contributions only for those hours actually worked by B & E Backhoe, Inc.'s ("B & E") employees who split their time between work covered by a collective bargaining agreement and uncovered work, rather than conclusively presuming that each employee worked forty hours per week. B & E cross appeals the district judge's ruling that travel time to and from work is includable in non-covered work performed by employees, and asks us to develop a "de minimus" rule to avoid litigation where the incidental costs and attorney's fees awarded to the Trusts far exceed the principal recoverable sum. Both parties request attorney's fees on appeal.
 
 
 2
 The district court had jurisdiction pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a) (1982) and section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1132(e) (1980). We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 I.
 
 3
 Robert L. Payne ("Payne") and Robert Edward Almond ("Almond") are the owners, officers, and employees of B & E, a small family-owned business that they run out of their home.[1] Each perform work covered by a "short-form" collective bargaining agreement ("Agreement") between B & E and the International Union of Operating Engineers, Local Union No. 12 ("Local 12"). This collective bargaining agreement incorporates by reference the terms of the Master Labor Agreement for Southern California ("MLA") in effect between Local 12 and the Associated General Contractors of Southern California, Inc. and other multi-employer associations. The MLA covers employees who perform any work in the operating engineers' craft, which includes the operation of power-driven machinery such as the backhoes operated by Payne and Almond.
 
 
 4
 B & E charges its customers[2] an hourly rate for actual hours worked (presently $71.00 per hour), which includes the labor for Payne and Almond and the equipment, and bills these charges with invoices showing the number of hours worked. B & E kept accurate records of the hours of backhoe work performed by Payne and Almond on these invoices, but kept no records of hours worked by these two employees in duties for B & E other than backhoe work. B & E estimates the hours of additional duties to be two and one-half hours per week each (two hours travel time to and from the jobsite, one-half hour miscellaneous activities, such as purchasing fuel and supplies, maintaining the equipment, meeting with accountants and preparing tax returns, arranging for insurance, and speaking to representatives of general contractors by telephone to arrange jobs). B & E compensates Payne and Almond by distributing profits consisting of income generated by the work of each employee less related operating expenses.
 
 
 5
 The MLA requires that signatory employers, such as B & E, pay fringe-benefit contributions to the Trusts at rates established in the MLA for "each and every hour worked or paid" to their employees who perform any work covered by the MLA. During the period from April of 1983 through June of 1987, B & E reported that Payne and Almond each worked far less than forty hours per week operating backhoes (approximately twenty to twenty-two hours per week each),[3] and contributed only for the number of hours those two employees actually worked (as determined by hours invoiced to the contractors). Mrs. Payne, the bookkeeper, has never made an effort to control the keeping of business records of B & E so as to cause "minimum hours" of employment necessary to retain eligibility to be reported. She had read the 1972 Resolution and believes she has complied with it.
 
 
 6
 On August 12, 1987, an auditor representing the Trusts reviewed the records of B & E for the period in question[4] and determined that B & E had under-contributed. The auditor calculated benefits due at forty hours per week (regardless of actual hours worked) for the audit period, deducted contributions actually made by B & E, and arrived at the sum of $63,439.56 due the Trusts in fringe benefit contributions. The auditor also claimed 10% of this amount in liquidated damages ($6,643.96) and $300 in audit costs.
 
 
 7
 In January of 1972 the Fund Manager of the Trusts realized that the Trusts' auditors had no way of verifying the number of hours actually worked by non-hourly employees. Hours worked by an employee who receives an hourly wage can be verified by dividing the payroll by the hourly wage. Furthermore, the hourly employee has an economic incentive to make sure that all hourly wages due are paid. A salaried employee or an owner, on the other hand, usually receives the same amount regardless of the hours he works. Thus he has no economic incentive for assuring that the employer keeps accurate records of all hours worked, and typically employers do not keep business records of time worked by salaried employees. Therefore the Trusts had no way of proving the actual number of hours worked by such non-hourly employees, and particularly had no way of proving the actual number of hours worked in the operating engineers craft when duties were split between covered and non-covered work.
 
 
 8
 In response to this problem, the parties to the MLA created the Labor-Management Adjustment Board ("LMAB") to interpret the "all hours worked or paid" language in the MLA with respect to the splitting of time between covered and non-covered duties and with respect to salaried and other non-hourly employees. The LMAB, convened on July 26, 1972, passed the following resolution ("1972 Resolution"):
 
 
 9
 Resolved, that when an employee has been dispatched by the Union to a contractor and the employee performs any work whatsoever covered by the Agreement, the contractor shall be obliged to pay fringe benefit contributions to the Trusts at the required rate for each and every hour worked by the employee or paid for by the contractor. Further, that in the event the payroll records of the contractor show that such an employee is paid by salary or any method other than hourly wages, then the employee shall be presumed to have worked for a minimum of forty (40) hours during each week of such employment and payment, and fringe benefit contributions shall be paid for all such hours.
 
 
 10
 (emphasis added) (the underlined portion of the 1972 Resolution shall be cited as "the forty hour presumption").
 
 
 11
 On April 14, 1988, the Trusts filed a complaint for breach of contract in the U.S. District Court for the Central District of California against Backhoe, claiming the right to receive hourly contributions from B & E on forty hours per week for each of the two full-time employees, Payne and Almond. The parties filed a written stipulation of facts admitted without need for proof. On August 24, 1988, Judge Wilson conducted a bench trial of the action, hearing testimony from Payne, Almond, and Payne's wife.
 
 
 12
 The Trusts claimed that the forty hour presumption contained in the 1972 Resolution is conclusive, while B & E argued that an employer should be given an opportunity to rebut the forty hour presumption. The district court held that the presumption is rebuttable, and B & E had successfully rebutted it. However, the judge went on to hold that B & E must contribute to the Trusts for all hours actually worked, including the two and one-half hours each of its two employees spent performing work of which at least a part was non-MLA-covered (travel and miscellaneous).[5]
 
 II.
 
 13
 The district court's interpretation of a contractual provision is a question of law reviewed de novo. Kemmis v. McGoldrick (Kemmis I), 706 F.2d 993, 996 (9th Cir.1983). Findings as to what the parties to a contract said or did are reviewed under the clearly erroneous standard. L.K. Comstock & Co. v. United Engineers and Constructors, Inc., 880 F.2d 219, 221 (9th Cir.1989).
 
 
 14
 The parties allege a number of errors made by the district judge below. We address each in turn.
 
 A.
 
 15
 The Trusts first contend that the district court erred in holding that the presumption that employees work forty hours per week, as contained in a resolution interpreting a collective bargaining agreement, is rebuttable as to non-hourly, split-time employees. We disagree.
 
 
 16
 We have, on more than one occasion, interpreted the same MLA and 1972 Resolution at issue in the present case. In Sapper v. Lenco Blade, Inc., 704 F.2d 1069 (9th Cir.1983) we held that the forty-hour presumption, as it related to non-hourly employees, was rebuttable,[6] noting that "a ruling that the word 'presumed' as used by the LMA Board [in the 1972 Resolution] requires an irrebuttable presumption would rob the word of its plain meaning." Id. at 1072. We further noted that allowing the presumption to be rebutted does not unnecessarily hinder Trust oversight of an employer's compliance with its obligation to pay contributions, since the employer would bear the burden of proving anything less than forty hours. Id. See also Operating Engineers Pension Trust v. Charles Minor Equipment Rental, Inc., 766 F.2d 1301 (9th Cir.), amended, 778 F.2d 538 (1985).
 
 
 17
 In Operating Engineers Pension Trust v. A-C Co., 859 F.2d 1336 (9th Cir.1988)[7], we again discussed the presumption as it related to non-hourly split-time employees. In that case, the Trusts sued the employer for contributions from three employees who indisputably worked forty hours per week, though these hours were split between MLA and non-MLA work. There we held that in order to determine whether the employer must contribute to the trust fund based upon a minimum of forty hours a week, a court must conduct a two step inquiry. First, it must consider whether the employee worked forty hours a week. At this stage in the inquiry, there exists a rebuttable presumption that a salaried or non-hourly employee has worked full time. If the employer successfully rebuts this presumption, he need only contribute for the actual hours the employee worked. If the presumption is not overcome, the court proceeds to step two of its inquiry. At this stage there is nothing the employer can do to escape contributing for forty hours per week. This is because an employee who worked a minimum of 40 hours per week is conclusively presumed to have worked for forty hours performing MLA work, even though the employee may in fact have spent part of his time performing non-MLA tasks.[8] Id. at 1340. Since the three employees of A-C Co. had worked a total of 40 hours per week each (including both MLA and non-MLA work), the employer was unable to rebut the first-step presumption. Under the conclusive presumption outlined in the second-step, the employer was required to make contributions on a full-time basis. Id. at 1341.
 
 
 18
 It is the precise question left open by A-C Co. that is involved in the present lawsuit. Id. at 1340, n. 3. Specifically, the Trusts claim that where non-hourly employees are split-time employees, as are Payne and Almond, the forty-hour presumption should be conclusive. We disagree.
 
 
 19
 The Trusts first contend that the district court erred in extending the Lenco Blade and A-C Co. analysis (that the forty hour presumption for non-hourly employees is rebuttable) to split-time employees by failing to look to extrinsic evidence of the meaning of the MLA and the 1972 Resolution as intended by the bargaining parties. They argue that all of the parties to the MLA and the 1972 Resolution intended the forty hour presumption to be conclusive. In support of this contention, they cite to the Stipulation of Facts agreed upon by the Trusts and B & E. In this stipulation, it is written that the MLA "should be interpreted so as to remove any burden on the Trusts to prove the actual hours worked in the craft or the actual hours worked by salaried or non-hourly employees, thereby avoiding high audit costs and litigation costs." To avoid disputes, this reasoning "would apply across the board, and no employer would be allowed to attempt to show less than 40 hours per week." (emphasis added). Next, the appellants argue that B & E failed to keep adequate records, and because of this must contribute based upon forty hours per week. These arguments fail for a number of reasons.
 
 
 20
 Initially, the Trusts are incorrect as a matter of labor law. A collective bargaining agreement is not governed by the same principles of interpretation applicable to private contracts. Transportation-Communication Employees Union v. Union Pacific Railroad Co., 385 U.S. 157, 160-61, 87 S.Ct. 369, 371, 17 L.Ed.2d 264 (1966) (a collective bargaining agreement is not a private contract between two private parties, but is rather a generalized code to govern a myriad of cases and parties, calls into being a new common law of a particular industry or plant, and cannot be interpreted without considering the scope of other related collective bargaining agreements as well as the practice, usage and custom pertaining to all such agreements). We may consider extrinsic evidence of parties' intent at the time of execution if the bargaining agreement is ambiguous. Kemmis v. McGoldrick (Kemmis II), 767 F.2d 594, 597 (9th Cir.1985) (emphasis added). We have interpreted this same MLA and 1972 Resolution on a number of occasions (in Lenco Blade and in Charles Minor Equipment Rental ) without the help of extrinsic evidence, finding the provisions unambiguous. Since these cases have found the forty hour presumption to be rebuttable, the Trusts cannot now claim the wording is ambiguous and extrinsic evidence should have been allowed. It was their obligation to argue this in those earlier cases. In fact, the Trusts may be collaterally estopped from raising the question of whether the forty hour presumption contained in the 1972 Resolution is rebuttable, at least as to employees who do not split their time between covered and uncovered work. Charles Minor Equipment Rental, 766 F.2d at 1303.
 
 
 21
 The Trusts' argument that extrinsic evidence of the parties actual intent outweighs the federal policy in uniformity of interpretation, and thus the MLA should be interpreted anew in each case, is misleading. The cases cited for those propositions do not so hold. Furthermore, they are distinguishable from the instant case in that in those cases the court was interpreting language similar to language it had interpreted in previous cases, but contained in a different master or short form labor agreement than in the case before it. On the other hand, we are interpreting an identical agreement already interpreted by us in previous cases.
 
 
 22
 The Trusts cite Kemmis v. McGoldrick, 767 F.2d 594 (9th Cir.1985) (Kemmis II ) to support their argument that the district court should give full consideration to extrinsic evidence as to the meaning of the MLA intended by the bargaining parties. In Kemmis II, however, the extrinsic evidence concerned only the short form agreement between the particular employer and the union, not an interpretation of the master labor agreement itself. Thus, the extrinsic evidence did not affect the substantive provisions of the employee benefit plans, as is the case here, but merely determined whether an individual employer did or did not intend to be bound by the plan as a whole. Id. at 598.
 
 
 23
 The Trusts also cite to A-C Co. In that case, the employer argued that the trusts should be collaterally estopped from litigating the effect of the forty hour presumption language contained in a resolution because that issue was already decided in Lenco Blade. We rejected that argument because Lenco Blade involved the So. Cal. MLA and the LMAB's 1972 Resolution, while the case at bar involved the San Diego MLA and the JLB 1980 Resolution (though the language of the two was identical). We went on to note in dicta that federal policy does not require that different labor agreements with identical language be interpreted similarly. A-C Co., 859 F.2d at 1340. However, that reasoning does not apply in the instant case because here we have the same MLA and same 1972 Resolution already partially interpreted in Lenco Blade and Charles Minor Equipment Rental.
 
 
 24
 An additional reason for rejecting intent evidence at this stage is that it would require that an en banc court reverse Lenco Blade and Charles Minor Equipment Rental, which are already established law in this circuit. It would make no sense to apply the Trusts' intent argument solely to the question left open in A-C Co. (whether the forty hour presumption is rebuttable for split-time non-hourly employees). Their intent evidence clearly says that the parties intended in all cases for the presumption to be conclusive. That position has already been rejected by us in prior cases.
 
 
 25
 Finally, the "evidence" of intent offered by the Trusts is somewhat suspect. All of the extrinsic evidence of intent comes from the Stipulation of Facts agreed upon by the two parties to this litigation. This does not establish the actual intent of the parties to the MLA, because there are numerous parties to that agreement, and they did not consent or agree to this version of the facts. It would be unfair to interpret that agreement according to these "facts", as this would bind those other parties.[9]
 
 
 26
 The appellants next argue that ERISA imposes a duty upon each employer to maintain accurate records of the exact amount of employment which is the measure of the contractual obligation to contribute to the employee benefit plans. Because B & E failed to keep written records detailing all duties performed by its employees, it should be required to contribute based upon forty hours. This argument is based upon faulty logic and a flawed reading of Brick Masons Pension Trust v. Industrial Fence & Supply, 839 F.2d 1333 (9th Cir.1988).
 
 
 27
 The Brick Masons court did note that there is a statutory duty under ERISA to maintain records of the number of hours worked by employees in order to permit the calculation of benefit contributions due. Id. at 1338; 29 U.S.C. Sec. 1059(a)(1). However, contrary to the Trusts' implication, the court did not hold that it necessarily follows from this that if Harris, a non-union employer, failed to keep adequate records it was required to contribute for either forty hours per week or actual hours worked by its masons, whether those hours were spent on covered or uncovered work. Rather, the court held that once the trusts prove both that Harris performed some covered work and that they failed to keep adequate records, the burden shifts to Harris to come forward with evidence of the extent of covered work performed by its masons. Because Harris failed to come forward with any evidence of how many hours of covered work its masons performed, the trusts were entitled to recover contributions for all hours actually worked by those thirty-five masons during the quarter in which they were shown to have performed some covered work. Id. at 1338-39.
 
 
 28
 The reasoning of that case actually supports the district court's decision in the instant case. The district judge did shift the burden of proof to B & E as to exactly how many hours its employees worked (though this was done because of the forty hour presumption, and not because of inadequate recordkeeping). However, in the case at bar, unlike in Brick Masons, the employer was able to come forward with evidence of the amount of hours worked, and in fact proved this number to the judge's satisfaction.
 
 
 29
 In sum, we hold that the presumption contained in the MLA is rebuttable when it is applied to non-hourly split-time employees.
 
 B.
 
 30
 B & E contends that the district court erred in finding that, once B & E rebutted the presumption that its employees worked forty hours per week, it must contribute to the Trusts for all hours actually worked by its employees, including hours spent performing non-covered work. We find no error here, based upon the line of cases distinguished in Lenco Blade and cited in note six of this opinion. Those cases involved full time (forty hours per week) employees who split their time between work covered by the MLA and non-covered duties. There we held that the employers were required to contribute to the Trusts for all hours the full-time employees worked, regardless of whether some of those hours were spent performing non-MLA covered work. Those cases do not mandate the result reached by the district court, for those cases (at least as later interpreted by Lenco Blade and Charles Minor Equipment Rental ) all involved forty hour per week employees, unlike the instant case. However the holdings in those cases, as well as in A-C Co., suggest the path Judge Wilson chose.
 
 
 31
 In A-C Co. we noted that the primary reason for adopting the JCB Resolution (which contained language identical to that in the 1972 Resolution at issue in the instant case) was to minimize the employers' ability to manipulate accounting records to make it appear that employees were not performing MLA work. It would place an "undue burden on most trust funds to require them to perform the investigatory accounting work necessary to ensure the accuracy of employer contributions where employers purport to split their employees' time between bargaining unit and nonbargaining unit work." A-C Co., 859 F.2d at 1342. This was the primary justification for the conclusive presumption in stage two of our analysis (after an employer had failed to rebut the presumption that his non-hourly employee worked forty hours per week) that all forty hours were spent performing covered work. That same reasoning applies in the case at bar, and also justifies a conclusive presumption that all hours worked by an employee (after the employer successfully rebutted the presumption that his non-hourly employee worked for forty hours per week), even if less than forty per week, were spent performing covered work.
 
 C.
 
 32
 B & E also asks us to find that the district court erred in holding that travel time to and from places of work by B & E employees should count as hours worked in calculating trust contributions. However, B & E offers in support of this request only the facts that the operators were not reimbursed by either the general contractor or B & E, and that no deduction is allowed for travel to and from the job by the IRS. We are puzzled as to the relevance of these statements. The district court found, as a factual matter, that Payne and Almond "did perform other work for B & E which was not invoiced to the contractors, this work amounted to no more than 2.5 hours per week." We have no basis (nor has B & E given us any reason) to overturn the district court's determination that B & E failed to report two and one-half hours per week of work for both Payne and Almond, and thus owes the Trusts contributions based on five hours per week.
 
 III.
 
 33
 B & E requests that this court develop a new "de minimus" rule to bar litigation where only a few hours trust contribution is owing. If we adopt such a rule, B & E asks us to reverse the district court award of attorney's fees to the Trusts, since they would no longer be the prevailing party. B & E argues that there was no economic justification for this case, since the Trusts received only $8,068.45 in contribution recovery, rather than the $63,643.56 sought. The recovery for attorney's fees, audit costs, interest and liquidated damages far exceeded the actual recovery. Because a case such as this gives little return except to the attorneys, B & E asks this court to develop a rule such that a trust not be declared the prevailing party when it loses on the primary legal issues tried, even if it ends up recovering for a few hours contribution owing.
 
 
 34
 Aside from the claimed wisdom of such a rule,[10] we are without authority to establish it. Congress saw fit to impose on trust funds a statutory and fiduciary duty to collect contributions that are owed under ERISA (A-C Co., 859 F.2d at 1343-44), and to mandate that the courts grant them attorney's fees whenever they prevail. 29 U.S.C. Sec. 1132(g)(2)(D); Operating Engineers Pension Trust v. Reed, 726 F.2d 513, 514 (9th Cir.1984).
 
 
 35
 The harsh effect of the mandatory attorney's fees of which B & E complains is softened somewhat by the district judge's discretion, utilizing the twelve factors set forth in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976),[11] in determining what amount is reasonable. In fact, in the instant case the Trusts received only $12,000 in attorney's fees instead of the $19,673.00 requested, because the recovery was so disproportionate to the amount sought, and the Trusts did not prevail on their primary legal position.
 
 IV.
 
 36
 The Trusts ask us to penalize B & E, pursuant to Fed.R.App.P. 38, for filing a frivolous cross-appeal. "An appeal is considered frivolous 'when the result is obvious or the appellant's arguments of error are wholly without merit.' " Operating Engineers Pension Trust v. Cecil Backhoe Service, Inc., 795 F.2d 1501, 1508 (9th Cir.1986) (citations omitted) (Local 12 awarded attorney's fees and double costs against employer where employer's brief cited only inapposite authority and indemnity claim was nonsensical).
 
 
 37
 B & E's appeal was not frivolous. There is certainly some merit to B & E's complaint that although they prevailed on all the substantive legal theories below, the Trusts still recovered $12,000 in attorney's fees simply because the district court determined that a few hours per week spent traveling to and from work should have been included in total hours worked for contribution purposes. The result of their request for a "de minimus" rule is not wholly obvious, courts have been known to develop rules or gloss on statutes to avoid inequity. To call this type of argument frivolous, rather than limiting that term to cases where the appellant's position makes no logical sense or is already clearly rejected by current law, would discourage novel approaches to and the growth of the law.
 
 V.
 
 38
 Both parties request an award of attorney's fees incurred on appeal. The Trusts first argue that if they are successful in having the forty hour presumption declared conclusive on this appeal, the proper amount of attorney's fees awarded below would need to be re-determined, since the district judge awarded reduced attorney's fees in light of the results obtained. Since we find the Trusts unsuccessful on this issue, no remand is necessary.
 
 
 39
 The Trusts further argue that they are entitled to attorney's fees on appeal, pursuant to 29 U.S.C. Sec. 1132(g)(2) (1982).[12] This section does apply to attorney's fees on appeal. Cecil Backhoe Service, 795 F.2d at 1508 (appellate court granted attorney's fees to trust fund on appeal for their defense of the district court's award of unpaid contributions); Brick Masons, 839 F.2d at 1339 (ERISA requires the court to award attorney's fees, including fees on appeal, to a prevailing fiduciary in an action to collect delinquent fringe benefit fund contributions).
 
 
 40
 Since these fees are mandatory, the Trusts should be awarded attorney's fees on appeal, but only for those hours spent defending against B & E's cross-appeal. Brick Masons, 839 F.2d at 1339 (though trust fund did not succeed on every argument, they are entitled to collect reasonable attorney's fees on appeal attributable to the issue discussed in Part II of that opinion). The Trusts should submit to this panel an accounting of hours spent defending against the cross-appeal, and we will then determine what attorney's fees are reasonable.
 
 
 41
 No attorney's fees are awarded to B & E on appeal, even though it is successful in defending against the Trusts' attempt to reverse the decision below. Attorney's fees for prevailing employers, unlike those for trust funds, are discretionary. 29 U.S.C. Sec. 1132(g)(1)[13]; Lenco Blade, 704 F.2d at 1072-73. In exercising our discretion, we consider the following factors:
 
 
 42
 "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions."
 
 
 43
 Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir.1980) (citations omitted).
 
 
 44
 Considering these guidelines, we decline to award B & E attorney's fees on appeal. The Trusts certainly did not appeal the decision below in bad faith (since it was a question unanswered by our circuit), and their position had merit. There is likewise no need to deter trust plans from bringing such suits. Though factors two and four seem to cut in favor of the employer, we do not think this is sufficient. See also Operating Engineers Pension Trust v. Gilliam, 737 F.2d 1501, 1505-06 (9th Cir.1984) (the Hummell considerations "very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs").
 
 
 45
 The district court's judgment is AFFIRMED in all respects. The Trusts are awarded attorney's fees for defending against B & E's cross-appeal, by an amount to be determined upon motion of the appellants.
 
 
 
 [1]
 Mrs. Ann Payne is also an officer, as is her sister, Mrs. Faye Almond
 
 
 [2]
 They do over ninety-eight percent of their work for one customer, Ultman's Construction Company
 
 
 [3]
 Payne spends his free time at home with his family and three children, and coached a girl's softball team. Almond spends his free time coaching little league. Although the Trusts keep referring to Payne and Almond as "full-time employees," they explained at the trial that they meant by this only that they worked for no one else in addition to B & E, not that they worked forty hours per week
 
 
 [4]
 In June of 1987, the Trusts gave notice to B & E of a new voluntary program for principle shareholder employees of signatories. B & E immediately joined, and this has eliminated the issues in this litigation from June, 1987 forward
 
 
 [5]
 Thus the district judge found that B & E owed the Trusts contributions based on five hours per week for the period in question, April 1983 to June, 1987, which amounted to $8,068.45. Additionally, the judge held that the Trusts were entitled to recover audit costs of $300, interest of $2,615.54, liquidated damages of $2,615.54, attorney's fees of $12,000, and costs
 
 
 [6]
 In order to find this presumption rebuttable, we distinguished three prior cases interpreting the same So. Cal. MLA and 1972 Resolution, which had all held that the employee is required to contribute to the fund based on forty hours per week for employees paid by any method other than hourly wages. These cases were Waggoner v. Wm. Radkovich Co., Inc., 620 F.2d 206, 207 (9th Cir.1980); Burke v. Lenihan, 606 F.2d 840 (9th Cir.1979); and Waggoner v. C & D Pipeline, 601 F.2d 456 (9th Cir.1979). We found those cases inapposite because they involved employees who indisputably worked forty hours per week. Lenco Blade, 704 F.2d at 1072 (emphasis in original). Thus we had not had the opportunity, prior to Lenco Blade, to decide whether the forty hour presumption was rebuttable
 
 
 [7]
 Mr. Wayne Jett, counsel for this action, was also counsel in A-C Co. While the employer association parties to the MLA in A-C Co. (the San Diego MLA) and the MLA in the instant case (the So. Cal. MLA) are different, the union party (Local 12) is the same. Signatories to both MLAs make contributions to the same trusts. The language of the San Diego MLA and Joint Conference Board Resolution in A-C Co. is identical to the language of the So. Cal. MLA and LMAB 1972 Resolution in Lenco Blade and in the instant case. A-C Co., 859 F.2d at 1339
 
 
 [8]
 We based this conclusive presumption in step two on the three cases cited in note 6. Those cases involved full time (forty hours per week) employees who split their time between work covered by the MLA and non-covered duties. The court held that the employers were required to contribute to the Trusts for all hours the employee worked, including hours spent performing non-covered work
 
 
 [9]
 This is particularly true because we can find no verification of what the members of the LMAB allegedly said regarding their intent outside of this Stipulation of Fact statement. The statements allegedly made by the parties to the LMAB regarding an employer not being allowed to attempt to show less than forty hours per week for a non-hourly employee is not contained in the Minutes of Meeting of the July 26, 1972 meeting the Board. These minutes simply contain, inter alia, a notation that Mr. Majich "discussed various problems encountered in administering the Trusts", and the wording of the 1972 Resolution. In any case, the minutes do not become part of the agreement between the parties, though the adopted 1972 Resolution does
 
 
 [10]
 How small must the amount of contribution owed be before the "de minimus" rule comes into play? Why shouldn't trust funds be permitted to collect small amounts? How are we to determine which legal issues argued were primary?
 
 
 [11]
 These factors are: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." Id
 
 
 [12]
 This section states: "[i]n any action under this subchapter by a fiduciary on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--(A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of--(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan ..., (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate." (emphasis added)
 
 
 [13]
 This section provides, in part: "[i]n any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." (emphasis added)