**OPERATING ENGINEERS' TRUST FUNDS, Plaintiffs,**

v.

**Jeremiah L. KINORES, Defendant.**

**CV. No. 94–00580 ACK.**

United States District Court, D. Hawaii.

March 17, 1995.

James K. Tam, Wesley H. Ikeda, Ashley K. Ikeda, Tam O'Connor & Henderson, Honolulu, HI, for plaintiffs.

Richard M. Rand, Torkildson, Katz, Jossem, Fonseca, Jaffe, Moore & Hetherington, Honolulu, HI, for defendant.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

KAY, Chief Judge.

### FACTS

In late 1990, Defendant Jeremiah L. Kinores ("Kinores") received a subcontract for the Waiehu Terrace Project. On October 25, 1990, Kinores signed a collective bargaining agreement ("CBA") with the Operating Engineers' Local Union No. 3 of the International Union of Operating Engineers ("Local 3"). Two of Kinores' employees, Jeremiah Kinores, Jr. ("Jerry") and Sean Andrade ("Sean"), then became members of Local 3 so that they could perform operating engineer work covered by the CBA.

The CBA required Kinores to pay Local 3 members according to the pay scale established by the agreement and to contribute sums to Plaintiffs Operating Engineers' Trust Funds ("Trust Funds") on their behalf. In particular, section 14.02.01 of the agreement provided:

> The Contractor shall pay the specified per-hour amount of contributions as set forth below to each of the Trust funds as listed below for each hour worked by or paid to each Employee covered by this Agreement.

Because there was insufficient operating engineer work to keep Sean and Jerry employed for 40 hours a week, Kinores wanted Sean and Jerry to also perform masonry and laborer tasks. However, because this work is not covered by the CBA, Kinores questioned whether he was required to pay Sean and Jerry according to the CBA's rate schedule or contribute to the trust funds for the hours Sean and Jerry engaged in these tasks. Kinores discussed assigning Sean and Jerry part-time to non-covered work with

Nathan Yasso, business agent for Local 3. Yasso informed Kinores that he did not object to the employees splitting their time between covered operating engineer work and non-covered masonry and laborer work. In his affidavit, Yasso states that he understood from this conversation that Kinores would not pay Sean and Jerry under the CBA or make trust fund contributions for the hours they engaged in masonry and laborer work. Yasso further stated it was his belief that this practice was appropriate under the CBA.

Subsequently, both Sean and Jerry split their time between operating engineer, masonry and laborer work. Kinores kept records of the hours each employee spent performing the different tasks and paid them a different rate depending on which type of work they performed. Kinores made trust fund contributions for the hours Sean and Jerry engaged in covered operating engineer work. Although Kinores did not submit trust fund contributions for the hours they spent performing non-covered masonry and laborer work, Kinores paid the employees cash fringe benefits for these hours.

During periodic audits conducted in January and July, 1993 and June 1994, the Trust Funds Administrator ("Administrator") discovered that Kinores was not reporting all of Sean and Jerry's hours. The Administrator also found that Kinores failed to report 16 hours worked by employee S. Kahunanu. The Administrator assessed Kinores a delinquency for the unreported hours and subsequently filed this action to collect sums due the Trust Funds.

### STANDARD OF REVIEW

 Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The United States Supreme Court has declared that summary

**1204**

judgment must be granted against a party who fails to demonstrate facts to establish an element essential to its case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Electrical Serv. v. Pacific Elec. Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir.1987). Instead, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *Id.* At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987), *citing, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis original), *citing, Matsushita, supra,* 475 U.S. at 587, 106 S.Ct. at 1356. Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Services,* 809 F.2d at 630–31.

### DISCUSSION

The sole issue before the Court is whether an employer must pay trust fund contributions for work performed by a "split-time" employee which is not covered by the collective bargaining agreement. A "split-time" employee is an employee who splits worktime between a "covered" operating engineer position and a "non-covered" position. According to the Trust Funds, Defendant must pay contributions for all work performed by Sean and Jerry, irrespective of whether the work is covered by the CBA. Defendant, on the other hand, asserts that he was only required to pay contributions for work covered by the CBA.

It is well settled in the Ninth Circuit that where an employee splits his worktime between a position covered by a CBA and a position not covered, the employer must contribute for all the hours the employee works or is paid. *E.g., Operating Engineers Pension Trusts v. B & E Backhoe, Inc.,* 911 F.2d 1347, 1351 (9th Cir.1990); *Operating Engineers Pension Trust v. A–C Company,* 859 F.2d 1336, 1341 (9th Cir.1988); *Kemmis v. McGoldrick,* 706 F.2d 993, 997 (9th Cir.1983); *Waggoner v. Dallaire,* 649 F.2d 1362, 1369 (9th Cir.1981). The policy behind this rule is to "minimize the employers' ability to manipulate accounting records to make it appear that employees were not performing [CBA] work." *B & E Backhoe,* 911 F.2d at 1354; *A–C Company,* 859 F.2d at 1342. The courts have noted that it would place an "undue burden on most trust funds to require them to perform the investigatory accounting work necessary to ensure the accuracy of employer contributions where employers purport to split their employees' time between bargain-

ing unit and nonbargaining unit work." *B & E Backhoe,* 911 F.2d at 1354; *A–C Company,* 859 F.2d at 1342.

Defendant attempts unsuccessfully to distinguish this line of cases in several ways. First, Defendant contends that the Ninth Circuit's holding is limited to cases involving a specific Master Labor Agreement for the Southern California General Contractors' Associations ("SCMLA"). Defendant is correct that the majority of cases dealing with this issue involve the SCMLA, a collective bargaining agreement in effect between the International Union of Operating Engineers, Local Union No. 12 ("Local 12") and the Associated General Contractors of Southern California and other multi-employer associations. *E.g., B & E Backhoe,* 911 F.2d at 1351; *A–C Company,* 859 F.2d at 1341; *Dallaire,* 649 F.2d at 1369. The SCMLA requires that signatory employers pay fringe benefit contributions to trust funds for "all hours worked by (or paid) each employee under this agreement." MLA arts VIII, IX & X; *Dallaire,* 649 F.2d at 1365. The Labor–Management Adjustment Board ("LMAB") interpreted this provision as requiring the contractor to contribute to the trust funds at the required rate "for each and every hour worked by the employee or paid for by the contractor" if the employee performs "any work whatsoever covered by the Agreement." *B & E Backhoe,* 911 F.2d at 1350. The Ninth Circuit interpreted the SCMLA and LMAB's resolution as creating a conclusive presumption that employers are required to contribute to the trusts for all hours a split-time employee works, including hours spent performing non-covered work. *E.g. B & E Backhoe,* 911 F.2d at 1351, n. 8.

■ The Ninth Circuit has extended their line of SCMLA cases to control the interpretation of a Master Survey Agreement which contained similar language to the SCMLA. *Kemmis,* 706 F.2d at 997; *see also, Seymour v. Hull & Moreland Engineering,* 418 F.Supp. 190, 197 (C.D.Cal.1976). The Court noted that the overriding federal policy of the Employee Retirement Income Security Act ("ERISA") is "best effectuated if collective bargaining agreements are interpreted and enforced in a uniform manner." *Kem-*

*mis,* 706 F.2d at 997. In contrast to ordinary contracts, collective bargaining agreements do not exist in isolation and cannot be governed by the "old common-law concepts" which control the interpretation of contracts. Rather, "[t]o interpret [a collective bargaining] agreement it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements." *Transportation–Communication Employment Union v. Union Pacific Railroad Co.,* 385 U.S. 157, 161, 87 S.Ct. 369, 371, 17 L.Ed.2d 264 (1966). Accordingly, the Ninth Circuit concluded that the Master Survey Agreement required employers to contribute to the trust funds for each hour worked by split-time employees, irrespective of whether the hours where actually spent performing covered tasks. *Kemmis,* 706 F.2d at 997.

■ The disputed language in the case at bar is almost identical to the language contained in the SCMLA and the Master Survey Agreement discussed in *Kemmis. See,* 706 F.2d at 995. These agreements both provided that contractors contribute to the trust funds for "hours worked by (or paid) each employee under this agreement;" Local 3's CBA provides for contributions for "each hour worked by or paid to each Employee covered by this Agreement." The Ninth Circuit's interpretation of the SCMLA thus controls this Court's interpretation of Local 3's CBA. Clearly, under Ninth Circuit law, the language of the CBA creates a conclusive presumption that an employer must contribute to the trust funds for all hours worked by a split-time employee, including hours spent performing tasks not covered by the agreement.

■ Defendant also argues that the Ninth Circuit's split-time rule is limited to cases involving salaried employees. Although the cases in which the rule was developed generally involved salaried employees, an employer's duty to pay trust fund contributions for each hour the employee works or is paid is not altered by the method in which he pays his employees. *See B & E Backhoe,* 911 F.2d at 1351–52. Rather, because the contributions are calculated on a per hour

basis, the unique concern with salaried employees is how to determine the number of hours an employee actually worked. *Id.* at 1350. In response to this problem, the Ninth Circuit has developed a rebuttable presumption that salaried employees work forty hours per week. *Sapper v. Lenco Blade, Inc.,* 704 F.2d 1069, 1072 (9th Cir.1983). If the employer rebuts this presumption, he need only contribute to the trust fund for the actual hours the employee worked; if not, he must contribute for forty hours per week. Regardless, the employer must pay trust fund contributions for all hours actually worked by the employee, even if part of the work performed is not covered by the CBA. *B & E Backhoe,* 911 F.2d at 1352.

■■■ In contrast to the forty hour presumption which may be rebutted upon a showing of actual hours worked, an employer cannot escape his duty to contribute to the trust funds for each and every hour worked or paid by showing that some of a split-time employee's hours were actually spent performing non-covered work. If the employee performs some work covered by the CBA, the employer must contribute to the trust funds for all hours the employee works or is paid. *E.g., B & E Backhoe,* 911 F.2d at 1351; *A–C Company,* 859 F.2d at 1341; *Kemmis,* 706 F.2d at 997; *Dallaire,* 649 F.2d at 1369.

■■ Defendant admits that Sean and Jerry were members of the Operating Engineers' Union and that they each performed operating engineer work that was covered by the CBA. Thus, Defendant was obligated under the CBA to contribute to the Trust Funds for each and every hour worked by Sean and Jerry, including hours spent performing non-covered tasks. Any inquiry into the number of hours Sean and Jerry spent on covered versus non-covered tasks is irrelevant. Defendant admits that he did not contribute to the Trust Funds for hours in which Andrade and Kinores performed masonry and labor tasks. Moreover, he does not refute Plaintiffs' allegations that he failed to contribute sums owed to the fund for

hours worked by S. Kahunanu. Therefore, Defendant is delinquent in paying sums due to the Trust Funds for these hours.

■■ The Court can appreciate the frustration of the employer when the union agent says one thing but the law is to the contrary. Under the prevailing law, however, that Kinores may have been misled by the statements of Local 3 representative, Nathan Yasso does not relieve him of his obligation to the employee benefit trusts. *Kemmis,* 706 F.2d at 997. Defendant does not contend that the parties had a written agreement to modify the employee benefit provisions of the CBA, nor that the trustees consented to any such agreement. *See id.* (court's holding that an oral agreement between a union representative and employer did not change employer's duty to pay funds under the CBA did not preclude written modification of employee benefit provisions assented to by the trust funds). Rather, it appears that Yasso, mistaken as to an employer's duty to contribute to the trust funds for all hours worked by split-time employees, orally consented to Kinores not contributing to the trust funds for hours Sean and Jerry spent performing non-covered masonry and laborer work. Because Kinores and Yasso could not orally agree to modify the employee benefit provision of the CBA, Yasso's consent did not relieve Kinores of his duty to contribute to the funds for each hour Sean and Jerry worked.

To support their motion for summary judgment, the Trust Funds submitted discrepancy notices demonstrating the number of hours unreported by Defendant and the amount of contributions and liquidated damages owed to the Trust Funds for these hours. The notices were prepared by the Trust Funds' auditor in the regular course of his audit procedures. In his opposition to Plaintiffs' motion, Defendant did not object to, or attempt to refute, the hours or calculations contained in the discrepancy notices, nor the Trust Funds' assessment of liquidated damages pursuant to section 14.05.03 of the CBA.[1] Therefore, the Court grants Plaintiffs' Motion for Summary Judgment and awards Plaintiff the following:

---

1. Defendant does object to the Declaration of Steve Ulicny, auditor for the Trust Funds, submitted in support of Plaintiffs' Motion for Summary Judgment. According to Defendant, the

Court should strike Ulicny's declaration in its entirety because he has attempted to mislead the Court by 1) alleging that all statements made in his declaration are based on personal knowledge;

| Dates | Contribution | Liquidated Damages |
|---|---|---|
| 10/90–12/91 | $18,271.90 | $4,065.78 |
| 1/92–12/92 | 799.20 | 202.12 |
| 1/93–12/93 | 562.08 | 177.66 |
| total | $19,633.18 | $4,445.56 |

The Court also awards Plaintiffs $4,135.77 in interest to December 12, 1994 and per diem interest of $6.48 per day from December 12, 1994 until judgment is entered by the Court.

Plaintiffs are entitled to reasonable attorney fees and court costs pursuant to section 14.05.03(e) of the CBA. Plaintiffs should file a motion for award of fees and costs so that this Court can make a determination of reasonableness.

### CONCLUSION

For the foregoing reasons, this Court GRANTS Plaintiffs' Motion for Summary Judgment and DENIES Defendant's Motion for Partial Summary Judgment.

IT IS SO ORDERED.

2) falsely alleging that Defendant failed to produce documentation; and 3) by misrepresenting that Defendant's payroll registers are the only records which reflect the hours worked by its employees. For the most part, Defendant's objections are irrelevant because the Court need only consider Ulicny's declaration to the extent that it identifies the discrepancy notices contained in exhibit C and indicates the interest owed on the delinquent amounts. Ulicny, as the Trust Funds' auditor, has sufficient knowledge to identify the business documents and to calculate the interest owed under the CBA.

During the oral hearing on this motion, Defendant's counsel stated that Defendant disputed Plaintiffs' calculations. However, Defendant has not submitted documentation in support of this argument or specified which computations he does not agree with.