**Albert L. MEREDITH,
Plaintiff–Appellant,**

v.

**NAVISTAR INTERNATIONAL TRANS-
PORTATION CORPORATION, and Its
Retirement Plan for Salaried Employ-
ees, Defendant–Appellee.**

**No. 90–1989.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 8, 1991.
Decided June 18, 1991.

Patrick H. Mulvany, Indianapolis, Ind., for plaintiff-appellant.

Michael A. Bergin, Charles B. Baldwin, Locke, Reynolds, Boyd & Weisell, Indianapolis, Ind., for defendant-appellee.

Before BAUER, Chief Judge, WOOD, Jr., Circuit Judge, and ESCHBACH, Senior Circuit Judge.

BAUER, Chief Judge.

The issue in this appeal is whether Appellee Navistar International Transportation Corp. and its retirement plan (collectively "Navistar") discharged and/or discriminated against Appellant Albert Meredith in order to interfere with Meredith's pension rights, in violation of the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. §§ 1001–1461. After a two-day bench trial, the district court found that Meredith had failed to produce any evidence of "any intent whatsoever on anybody's part" to interfere with his ERISA rights, and, therefore, entered judgment in favor of Navistar. Meredith appeals from that judgment. We affirm.

## I.

After almost 25 years with Navistar (and its predecessors), Albert Meredith began to think about retiring. He had a weak ticker, and took a month off in early 1987 to get it checked out. His cardiologist told him he could go back to work, but he should avoid stress. From mid- to late 1987, Meredith, then age 56, gave it his best shot, but he still felt tired all the time. It did not help matters any that he had to commute every week from Louisville, Kentucky, where he lived with his wife and daughter, to Indianapolis, Indiana, where he worked as a millroom foreman.

Come November 1987, Meredith was doing more than just thinking about retiring. He already had discussed the idea several times with his supervisor, John Flora, and in November he asked Jim Graddy, the plant personnel manager, to work up what his pension benefits would be if he retired. Graddy gave Meredith more than one estimate, but all the estimates hovered at about $1,000 per month. Graddy also told Meredith that, beginning in 1988, the health insurance benefits for Navistar employees and their families would change, such that he would owe $75.00 per month in premiums. (Up to that time, health coverage had been free of charge.) If he retired before the end of 1987, he could avoid these payments. Also, Meredith, like every other Navistar employee, had heard rumors that a reduction in force was expected the following year. All of this was enough to convince Meredith. Before leaving on vacation in early December, he executed a "Request to Retire" form, listing his expected last day of work as December 23, 1987.

While Meredith was on vacation, Graddy called him with some bad news. It seemed that Graddy miscalculated Meredith's pension benefits. Graddy told him that the actual payment would be approximately $970 per month, about $150 per month less than Graddy's most recent estimate. Graddy also sent Meredith a copy of the revised estimate. Meredith was not at all happy. He told Graddy that he and his family could not live on that kind of money. Nonetheless, Meredith told Graddy to submit his Request to Retire form to Navistar's headquarters in Chicago. Meredith said he would await the response from the

Chicago office, which had the authority to calculate the actual amount of pension payments.

When Meredith returned in mid-December from his vacation, he met with Graddy and his supervisors to make the final decision whether to retire. The trial testimony differed sharply on the nature and content of these meetings. Meredith claimed that he was told he had to retire or lose his job. Graddy and other Navistar management claimed that they told him there was a chance that part of his job would be eliminated in 1988, but if he chose to stay, there would be a job for him. In any event, the decision was made that Meredith would leave Navistar. Gary Stites, Meredith's superintendent, executed a letter stating that Meredith was to be "involuntarily separated as of December 31, 1987," due to a "reduction in Managerial force." The letter was back-dated so that it would pre-date Meredith's Request to Retire form. Stites and other Navistar management testified that they rigged-up this "separation" because they felt badly about the mis-calculation of Meredith's benefits and wanted to give him an extra bonus of some sort. Because of the "involuntary separation" ruse, Meredith was paid a $9,000 separation payment to which he would not have been entitled had he simply retired.

In February 1988, Meredith signed the necessary papers to make his retirement final. Soon thereafter, Meredith received his lump sum payment of $9,000, and began receiving his monthly pension checks from the Navistar fund. He also retained full health insurance coverage for his family at no cost to him. He did not remain idle, however. Even before he left the employ of Navistar, Meredith had lined up a job in Elizabethtown, Kentucky, much closer to home. Meredith continues to work at that job.

At trial, Navistar's director of employee pensions testified as to the effect on the pension fund of Meredith's early retirement. Because Meredith took early retirement, the fund will pay him, if he lives until age 80, over $20,000 more than if he would have worked until age 62 and then

retired, which is what he claims he wanted to do. Meredith also will save over $11,000 in insurance premiums that he would have owed. These facts, plus the $9,000 separation payment, mean that Meredith is in a much *better* financial position in terms of his retirement benefits—and Navistar in a correspondingly worse position—than if he would have continued working.

Not wanting to let Navistar's good deed go unpunished, Meredith sued Navistar under ERISA. Meredith claimed that Navistar unlawfully interfered with his pension rights by discharging him and/or forcing him into early retirement. *See* 29 U.S.C. § 1140. This claim went to trial before the district court in March 1990. After hearing testimony from Meredith and various Navistar employees, the court found that Meredith had failed to prove that his "separation" was arranged with the intent to interfere with his pension rights, nor did he prove that he was forced into early retirement. The court found instead that Meredith chose to retire early, at least in part because of the financial gain he would reap from that decision. The court also found that "the evidence is without dispute that the pension fund would have been many thousands of dollars better off had [Meredith] continued in his employment," and that Navistar management employees went "out of their way to help [Meredith] by giving him this extra separation pay."

In accordance with these findings, the court entered judgment dismissing Meredith's claim. The court did not award attorney's fees to Navistar, as Navistar withdrew its request for such fees. (Pursuant to § 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1), the district court, in its discretion, could have awarded Navistar a reasonable attorney's fee and costs of action, provided that Navistar was the prevailing party and Meredith's position was not substantially justified or no special circumstances were present that would have made a fee award unjust. *See Davis v. Chicago Municipal Employees Credit Union*, 891 F.2d 182, 184 (7th Cir.1989).) Meredith filed a timely appeal.

## II.

Section 510 of ERISA provides, in pertinent part:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

29 U.S.C. § 1140. "By its terms § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting." *Ingersoll–Rand Co. v. McClendon*, —— U.S. ——, 111 S.Ct. 478, 485, 112 L.Ed.2d 474 (1990). *See also Conkwright v. Westinghouse Electric Corp.*, 933 F.2d 231, 237 (4th Cir.1991) ("[I]t has been recognized that the primary focus of § 510 is to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights.") (quotations omitted).

■ Meredith could recover under § 510 if he could show that he was terminated or forced to retire by Navistar "because of a specific intent to interfere with ERISA rights ...; no action lies where the alleged loss of rights is a mere consequence, as opposed to a motivating factor behind the termination." *Dytrt v. Mountain State Telephone and Telegraph Co.*, 921 F.2d 889, 896 (9th Cir.1990) (citations omitted). *See also Turner v. Schering–Plough Corp.*, 901 F.2d 335, 347 (3d Cir.1990) ("To recover under § 510 the employee must show that the employer made a conscious decision to interfere with the employee's attainment of pension eligibility or greater benefits."). If Meredith had made a *prima facie* showing that Navistar discharged or harassed him, and that the desire to reduce his pension benefits was a "determinative factor" in that action, the burden would have shifted to Navistar to articulate a permissible reason for its action. *See id.*

■ The district court found that Meredith fell short of meeting his burden of proving a § 510 violation for (at least) three reasons: 1) the evidence showed that Navistar did not terminate Meredith or force him to take early retirement, but rather that Meredith chose to retire; 2) the evidence showed that Navistar did not harbor the specific intent to interfere with Meredith's ERISA rights, but rather went out of its way to get him additional benefits; and 3) the evidence showed that Meredith lost no pension benefits or rights due to Navistar's alleged wrongdoing, but rather will receive more money from the pension fund as a result of his early retirement. Meredith's primary beef on appeal is that these factual determinations are wrong. They need to be more than that; we disturb a district court's § 510–related factual findings only if they are clearly erroneous. *Ursic v. Bethlehem Mines*, 719 F.2d 670, 672 (3d Cir.1983). *See generally Anderson v. City of Bessemer City*, 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985); Fed.R.Civ.P. 52(a).

The district court committed no error here, "clear" or otherwise. The sole evidence supporting Meredith's claim was his own, somewhat equivocal testimony. Even taking that testimony at face value, Navistar offered abundant evidence to refute Meredith's allegations of discharge and illegal motive. We will spare ourselves, and the reader, the recapitulation of the record evidence summarized above. The district court, after hearing all the evidence, concluded that Navistar did not force Meredith out in order to interfere with his pension rights, but gave him a sweet deal to assist him in his voluntary decision to retire—a deal that actually resulted in Meredith receiving more money from the pension fund. That conclusion finds sufficient support in the evidence.

■ Perhaps sensing his inevitable defeat, Meredith switches his tactics—and, indeed, the basic nature of his claim—in his reply brief. Conceding that Navistar subsidized his early retirement to its detriment, Meredith now argues that, by so doing, the pension fund "violated its duty of loyalty to its beneficiaries [under 29 U.S.C. § 1104(a)], in favor of Navistar as employer." Appellant's Reply Brief at 1. Of course, an appellant cannot wait until the reply brief to present a new and differ-

ent argument to this court, much less an entirely new basis for a claim. *See Egert v. Connecticut General Life Ins. Co.*, 900 F.2d 1032, 1035 (7th Cir.1990); Circuit Rule 28(f). Thus, Meredith waived any duty of loyalty claim under § 1104, and we will not consider the belated argument in his reply brief.

One issue remains. Navistar withdrew its request for attorney's fees before the district court, but is not so forebearing on appeal. Navistar claims that it is entitled to the attorney's fees and costs it incurred in defending against Meredith's "frivolous" appeal, citing three provisions: 29 U.S.C. § 1132(g)(1) (within court's discretion to award attorney's fees to either party in ERISA suits); 28 U.S.C. § 1912 (when affirming, court of appeals can give prevailing party "just damages for his delay, and single or double costs"); and Fed.R.App.P. 38 (court of appeals may award "just damages and single or double costs to the appellee" if appeal is frivolous). We choose not to award Navistar attorney's fees under any of these provisions.

■ First, under § 1132(g)(1), a court— normally a district court, but at times also a court of appeals, *see, e.g., Operating Engineers Pension Trusts v. B & E Backhoe, Inc.*, 911 F.2d 1347, 1356–57 (9th Cir. 1990); *Nachwalter v. Christie*, 805 F.2d 956, 961 (11th Cir.1986)—has the discretion to award attorney's fees to a party in an ERISA action. Courts (both district and appellate) considering such awards traditionally have listed five factors that guide their discretion:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*B & E Backhoe*, 911 F.2d at 1357; *Nachwalter*, 805 F.2d at 961–62. *See also*

*Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 828–29 (7th Cir.1984) (quoting and listing cases that use five-factor test). In *Bittner*, we noted that this test is "oriented toward the case where the plaintiff rather than the defendant prevails and seeks an award of attorney's fees." 728 F.2d at 829. Thus, we suggested a more general and less cumbersome approach for requests for attorney's fees under ERISA. Under that approach (borrowed from the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A)), a prevailing party is entitled to reasonable attorney's fees unless the court finds that the position of the losing party was "substantially justified" or that

> special circumstances make an award unjust. These words create a modest presumption (modest because of the 'special circumstances' exception) in favor of awarding reasonable attorney's fees to the winning party, plaintiff or defendant, unless the loser's position, while rejected by the court, had a solid basis—more than merely frivolous, but less than meritorious.

*Bittner*, 728 F.2d at 830. Since *Bittner*, we have applied either its approach, the five-factor approach, or both. *See Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 697–98 (7th Cir.1991).

■ Whichever approach is used, the bottom-line question is essentially the same: was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent? We believe the former is a more apt description of Meredith's appeal than the latter. True, Meredith should have known that his chances of achieving a reversal of the district court's factual determinations were slim. Slim, but not utterly hopeless. *See, e.g., Savic v. United States*, 918 F.2d 696 (7th Cir.1990) (district court's findings of fact reversed as clearly erroneous). Further, there may well be "special circumstances" in this case that would make a fee award unjust, such as Meredith's ability to pay the award without great hardship. *See Bittner*, 728 F.2d at 830. In addition, we must keep in mind

ERISA's essential remedial purpose: to protect beneficiaries of pension plans. "Adherence to this policy often counsels against charging fees against ERISA beneficiaries since private actions by beneficiaries seeking in good faith to secure their rights under employee benefit plans are important mechanisms for furthering ERISA's remedial purpose." *Nachwalter*, 805 F.2d at 962. *See also B & E Backhoe*, 911 F.2d at 1357. In sum, we conclude that Navistar is not entitled to attorney's fees for this appeal under 29 U.S.C. § 1132(g)(1).

Second, and similarly, we decline to evoke the sanction provisions for "frivolous" appeals: 28 U.S.C. § 1912 and Rule 38. Although Meredith's claims on appeal are long shots, we do not believe they are the kind of "objectively groundless legal arguments" we found sanctionable under Rule 38 in *Hill v. Norfolk and Western Ry. Co.*, 814 F.2d 1192, 1200–03 (7th Cir. 1987); nor are they "entirely groundless" claims that "the plaintiff knew or should have known [were frivolous] long before trial," as in *Bugg v. International Union of Allied Indus. Workers of America*, 674 F.2d 595, 600–01 (7th Cir.1982). Further, Meredith's brief does not contain "blatant misrepresentations" of the facts or the law, as in *Thomas v. Digital Equipment Corp.*, 880 F.2d 1486, 1490–91 (1st Cir.1989); and *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir.1986). Rather, in his brief, Meredith presents his version of the facts and delivers his best pitch for a reversal. The pitch is way outside, but it is not so wild that sanctions for a frivolous appeal are warranted.

### III.

For the foregoing reasons, the district court's judgment in favor of Navistar and dismissing Meredith's claim is AFFIRMED. Navistar's request for attorney's fees on appeal is DENIED.