954 F.2d 1397
 60 USLW 2528, 22 Fed.R.Serv.3d 1,
14 Employee Benefits Cas. 2345
 PRODUCTION AND MAINTENANCE EMPLOYEES' LOCAL 504, Laborers'
International Union of North America, and Terry Groves,
President of the Production and Maintenance Employees' Local
504 as a Participant in the Retirement Benefit Plan for
Hourly-Paid Employees of Roadmaster Corporation,
Plaintiffs-Appellees, Cross-Appellants,
v.
ROADMASTER CORPORATION, The Retirement Benefit Plan for
Hourly-Paid Employees of Roadmaster Corporation, George C.
Nebel and Robert O. Zinnen, as Directors of Roadmaster
Corporation and Members of the Pension Finance Committee of
the Plan and Thomas N. Krukonis, as the administrator and
member of the Pension Finance Committee of the Plan,
Defendants-Appellants, Cross-Appellees.
 Nos. 89-1464, 90-2698.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 9, 1991.
Decided Jan. 28, 1992.
Rehearing and Rehearing En Banc Denied March 6, 1992.
 
 Murphy Hart, Hart & Hart, Benton, Ill., Terese M. Connerton (argued), Theodore T. Green, James S. Ray, Connerton, Ray & Simon, Washington, D.C., for plaintiffs-appellees, cross-appellants.
 David F. Loeffler (argued), Thomas P. Krukowski, Krukowski & Costello, Milwaukee, Wis., Kurtis B. Reeg, Belleville, Ill., for defendants-appellants, cross-appellees.
 Before COFFEY and MANION, Circuit Judges, and WILL,* Senior District Judge.
 MANION, Circuit Judge.
 
 
 1
 The defendants, Roadmaster Corporation, the Retirement Benefit Plan for Roadmaster's hourly employees, two of Roadmaster's directors, and its plan administrator appeal the district court's decision finding that an amendment Roadmaster made to the plan violated §§ 204(g) and (h) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1054(g, h). The plaintiffs, Roadmaster's employees' union and one of its members, appeal the district court's decision declining to award the costs and attorneys' fees they incurred in their suit against Roadmaster. We affirm the district court's judgment against Roadmaster but reverse the district court's decision not to award the plaintiffs their costs and attorneys' fees.
 
 I.
 
 2
 In late March 1986, George Webel and Robert Zinnen, two of Roadmaster's directors, concluded that Roadmaster's retirement plan for its hourly employees should cease accruing benefits to employees as of March 31, 1986. Roadmaster, however, did not officially amend the plan until June 27, 1986 when its Board of Directors unanimously passed a written amendment that retroactively ceased accrual of benefits under the plan effective March 31.
 
 
 3
 Section 204(h) provides that a defined benefit plan (as was Roadmaster's plan)
 
 
 4
 may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to--
 
 
 5
 (A) each participant in the plan, [and]
 
 
 6
 . . . . .
 
 
 7
 (C) each employee organization representing participants in the plan.
 
 
 8
 In an apparent attempt to comply with § 204(h), the plan administrator mailed a letter to Production and Maintenance Employees Local 504, the employees' union, informing the union that benefit accruals had ceased as of March 31. The union received this letter on June 6. Roadmaster, however, did not provide "a written notice ... to each participant in the plan...." Instead, on June 6, Roadmaster posted notices of the plan amendment on several bulletin boards in its plant. Those notices remained posted throughout June. At the time Roadmaster posted the notices, a large number of employees were on vacation. A dispute exists concerning exactly how many employees could have seen the posted notices, but Roadmaster has admitted that not all of its employees were on hand to see them.
 
 
 9
 After Roadmaster refused repeated requests by the union to correct what the union considered to be the illegal amendment to the plan, in January 1987 the union and several plan participants sued Roadmaster, the plan, and the plan's administrators. (We will refer to the defendants collectively as Roadmaster). The complaint's first count alleged that Roadmaster had illegally amended the plan because it failed to comply with the notice provision in § 204(h). The second count alleged that because the amendment ceased benefit accruals as of March 31, about three months before the amendment's adoption, the amendment violated § 204(g) of ERISA, 29 U.S.C. § 1054(g), which prohibits retroactive reductions of accrued benefits unless (among other things) the amendment is first submitted to the Secretary of Labor for approval. The plaintiffs also raised two other counts alleging breaches of fiduciary duty.
 
 
 10
 After about a year and a half of discovery in district court, the plaintiffs filed a motion for summary judgment on their claims that the plan amendment violated §§ 204(g) and (h). Once the plaintiffs filed their summary judgment motion, Roadmaster "clarified" the original amendment to provide benefit accruals for all employees from March 31 through June 30, 1986. Based on this "clarification," Roadmaster argued that its notices to the union and the employees were timely because those notices were sent and posted more than 15 days before June 30. To try to get around any problem with the form of the notice, Roadmaster argued that notice to the union, coupled with posted notices to the employees "substantially complied" with § 204(h)'s notice requirement. Roadmaster also argued that since it accrued benefits until June 30, the June 27 amendment did not retroactively decrease benefits and therefore did not violate § 204(g). Besides making these arguments to defend against the union's summary judgment motion, Roadmaster also filed its own motion for summary judgment on the §§ 204(g) and (h) claims.
 
 
 11
 The district court rejected Roadmaster's arguments and found that Roadmaster violated §§ 204(g) and (h). The court issued a written opinion, which concluded:
 
 
 12
 The Court ... ORDERS that (1) the Third Amendment to the Retirement Benefit Plan for Hourly-Paid Employees of Roadmaster Corporation, which ceases future benefit accruals, is hereby rescinded; (2) defendants are to give the participants their lost benefit accruals as provided in the Plan documents prior to the illegal adoption of the amendment in this case; and (3) defendants must contribute to the Plan such amounts, plus prejudgment interest, as would have been contributed to the Plan but for the amendment.
 
 
 13
 The court then found, presumably under Fed.R.Civ.P. 54(b) (the opinion does not cite the rule), "that there is no just reason for delay" and ordered the clerk to enter judgment for the plaintiffs on their §§ 204(g) and (h) claims. The court set forth its judgment on a document entitled "Judgment in a Civil Case," and the clerk entered judgment on the docket. See Fed.R.Civ.P. 58. However, both the judgment document and the docket entry state only that judgment is entered for plaintiffs; neither specifies the relief the court awarded. The court subsequently granted the plaintiffs' motion to dismiss voluntarily the third and fourth counts of their complaint. See Fed.R.Civ.P. 41(a). The court's order did not state whether the dismissal was with or without prejudice. The next day, Roadmaster appealed the district court's judgment.
 
 
 14
 Meanwhile, the plaintiffs had filed a motion for attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1). The court denied the plaintiffs' motion, vacated that decision, and then denied the plaintiffs' renewed motion for attorneys' fees. The plaintiffs have appealed the court's decision on fees and costs, and we consolidated their appeal with the defendants' appeal of the decision on the merits.
 
 II.
 
 15
 The first question we face is whether we have jurisdiction over these appeals. Our jurisdiction depends on 28 U.S.C. § 1291, which grants us jurisdiction over appeals from the district courts' final decisions. Our review of the record led us to question whether the district court has entered a final appealable judgment in the plaintiffs' suit against Roadmaster. If not, we do not have jurisdiction over Roadmaster's appeal. Moreover, if the underlying decision on the merits of the plaintiffs' claims is not final and appealable, neither is the decision regarding attorneys' fees. "Decisions about fees are separate 'final decisions' only after there is a judgment on the merits that would be final but for the matter of fees." Sandwiches, Inc. v. Wendy's Int'l, Inc., 822 F.2d 707, 711 (7th Cir.1987). Because of our concerns, we asked the parties to file supplemental briefs regarding appellate jurisdiction.
 
 
 16
 The district court ordered Roadmaster to pay money into the plan but did not quantify the amount. The court also ordered Roadmaster to pay prejudgment interest on that money but did not fix the amount of interest or a rate from which it could be computed. A decision awarding but not quantifying damages normally is not final because it leaves a question that is not collateral to the merits to be resolved in the district court. "A decision that fixes liability but not damages is not appealable, despite the entry of an order under [Fed.R.Civ.P.] 54(b). There is no material difference between an order that leaves all damages issues open ... and an order that leaves one, important damages issue [such as the amount of damages] open.... In either event the order is not a final disposition of a claim...." Kaszuk v. Bakery & Confectionery Union, 791 F.2d 548, 553 (7th Cir.1986) (citations omitted); see also Parks v. Pavkovic, 753 F.2d 1397, 1401 (7th Cir.1985). Similarly, a judgment that awards prejudgment interest but does not fix the amount or a rate from which the amount can be computed normally is not final because it too leaves an essential part of the claim unresolved. See Parks, 753 F.2d at 1401; Soo Line R. Co. v. Escanaba & Lake Superior R. Co., 840 F.2d 546, 549 (7th Cir.1988); Cinerama, Inc. v. Sweet Music, S.A., 482 F.2d 66, 72 (2d Cir.1973) (Friendly, J.).
 
 
 17
 Despite this general rule, the fact that the district court did not fix the amount of damages or prejudgment interest does not deprive us of jurisdiction over Roadmaster's appeal. The district court ordered Roadmaster to accrue benefits and to pay into the plan the amount of money that it would have paid in but for the amendment. The only reason for this order to pay into the plan was to fund the extra benefits that Roadmaster was required to accrue. As it turns out, however, there was no need to pay any money into the plan. The plaintiffs and Roadmaster agree that the plan has sufficient assets to fund the benefit accruals. Since Roadmaster does not have to pay any money into the plan, and thus also does not have to pay prejudgment interest, it is not important to quantify the amount of damages or interest. Nothing remains for the district court to do in fixing the amount of contribution to the plan.
 
 
 18
 In any event, even when a judgment fails to fix the amount of damages, "if the determination of damages will be mechanical and uncontroversial, so that the issues the defendant wants to appeal before that determination is made are very unlikely to be mooted or altered by it--in legal jargon, if only a 'ministerial' task remains for the district court to perform--then immediate appeal is allowed." Parks v. Pavkovic, 753 F.2d at 1401 (citing cases). This rule applies here. The amount of benefit accruals is set by a formula in the plan. Determining that amount is just a matter of plugging information into the formula. As for the amount of money necessary to fund those accruals, ERISA and the Internal Revenue Code set minimum funding requirements. See 29 U.S.C. §§ 1081-86; 26 U.S.C. § 412. The amount of money Roadmaster had to pay into the plan could not be determined until the benefits were accrued and the plan's actuaries determined the amount Roadmaster needed to contribute to fund those benefits. (As we have seen, the parties agree that no additional contribution by Roadmaster is necessary.) Neither the calculation of accrued benefits nor of the amount necessary to fund those benefits is likely "to make [this] appeal moot or even affect the issues on appeal...." Parks, 753 F.2d at 1401. Therefore, as in Parks, the judgment in this case is final even though the court failed to quantify it.
 
 
 19
 This still leaves several other questions. The district court appeared to enter judgment on the plaintiffs' §§ 204(g) and (h) claims under Fed.R.Civ.P. 54(b). Rule 54(b) provides that in a case involving multiple claims, the district court may direct entry of final judgment "as to one or more but fewer than all of the claims." However, a court may enter judgment under Rule 54(b) only if the "claim" the judgment disposes of is truly a separate claim. Horn v. Transcon Lines, Inc., 898 F.2d 589, 593 (7th Cir.1990). Different theories of relief--that is, different legal characterizations of the same facts--are not separate claims. Id.; Olympia Hotels Corp. v. Johnson Wax Dev. Corp., 908 F.2d 1363, 1367 (7th Cir.1990). As far as we can tell, the factual overlap between the §§ 204(g) and (h) counts and the remaining counts--the fiduciary duty counts--is such that the separate counts are not really separate claims but merely different legal characterizations of the same facts. In any event, the factual overlap is enough so that the district court should at least have explained why it thought entering judgment was appropriate. The court, however, gave no reasons for directing entry of judgment. In fact, the court did not even mention Rule 54(b). Cf. Horn, 898 F.2d at 592; United States v. Ettrick Wood Products, Inc., 916 F.2d 1211, 1218-19 (7th Cir.1990) (per curiam ).
 
 
 20
 The defects in the court's entry of judgment under Rule 54(b), however, do not defeat appellate jurisdiction in this case. Shortly after entering judgment and before Roadmaster appealed, the district court granted the plaintiffs' motion to dismiss voluntarily the remaining counts of their complaint under Fed.R.Civ.P. 41(a)(2). A dismissal under Rule 41(a)(2) is without prejudice unless the order of dismissal states otherwise. The court did not state whether the dismissal was with or without prejudice; therefore, the dismissal was without prejudice. A dismissal without prejudice is generally not final and appealable. See Ordower v. Feldman, 826 F.2d 1569, 1572 (7th Cir.1987). In this case, however, the district court's summary judgment on the §§ 204(g) and (h) counts granted the plaintiffs all the relief they had requested and were entitled to. As plaintiffs noted in the memorandum they filed in the district court supporting their motion to dismiss, trial on the two remaining claims would have been unnecessary. By dismissing the final two counts, the district court ended the litigation in that court. Cf. American Nat'l Bank & Trust Co. v. Secretary of Housing and Urban Development, 946 F.2d 1286 (7th Cir.1991) (judgment that granted intervenors all the relief to which they were entitled was final even though judgment did not actually dismiss the intervenors' claims); Ordower, 826 F.2d at 1572 (dismissal without prejudice final when it was clear the plaintiff could not file a new complaint in district court); Baltimore Orioles v. Major League Baseball Players Ass'n, 805 F.2d 663, 667 (7th Cir.1986) (order effectively ending the litigation on the merits was final even if the district court did not formally enter judgment on abandoned claim).
 
 
 21
 One final problem remains. The district court's separate judgment document on the plaintiffs' §§ 204(g) and (h) claims did not specify the relief awarded by the court. We have consistently held that the district court's judgment, set forth on a document separate from the court's opinion, must be "self-contained and complete" and set forth the relief granted the prevailing party. See Farr v. Gruber, 950 F.2d 399, 400-01 (7th Cir.1991); American Nat'l Bank v. HUD, supra, 946 F.2d at 1289 (citing cases). But even though the district court did not enter a proper final judgment, it has reached a final decision. "The statute, 28 U.S.C. § 1291, authorizes appeals from final decisions, and the parties may waive the requirement of a final judgment on a separate paper complying with Rule 58." Soo Line R. Co. v. Escanaba & Lake Superior R. Co., 840 F.2d at 549 (citing Bankers Trust Co. v. Mallis, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1975)). Here, neither party has complained about the lack of a proper judgment document. As in Soo Line and Bankers Trust, the parties have waived the separate document requirement, so the defective judgment does not defeat our jurisdiction.
 
 III.
 
 22
 Having determined we have jurisdiction, we proceed to the merits. Roadmaster amended its plan on June 27, 1986, to cease accruing benefits as of March 31, 1986. It sent written notice to the union on June 6; it posted notices on bulletin boards in its plant on the same day. Based on these facts, this is a simple case.
 
 
 23
 Roadmaster's notice to its employees violated § 204(h) in several ways. First, § 204(h) requires that notice be given to the union and participants "after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment...." 29 U.S.C. § 1054(h). Roadmaster's notice to the union and employees fails this requirement on two counts: the notice came before the plan amendment was adopted and (more importantly) it came after the amendment's effective date. This is precisely the opposite of what § 204(h) requires.
 
 
 24
 Section 204(h) also states that a plan "may not be amended" to significantly reduce future benefit accruals unless the plan administrator "provides a written notice ... to each participant in the plan...." Id. (emphasis added). Roadmaster's notice to the participants also has two major failings. First, posting several notices on bulletin boards throughout the plant is not the same as providing "a written notice ... to each participant." Second, even if we were willing to contort § 204(h) to allow general posted notice rather than the individual notice the language plainly requires, the provision still provides that the notice reach "each" participant. At the time Roadmaster posted the notice, many employees were on vacation, and Roadmaster admits that not all of its employees could have seen the notices. Therefore, even if § 204(h) allowed general posted notices, Roadmaster's notice violated § 204(h) because it is undisputed that every participant in the plan could not have seen the notices.
 
 
 25
 Roadmaster also violated § 204(g) when it amended the plan. Section 204(g) provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan" absent submission of the amendment to and approval by the Secretary of Labor under § 302(c)(8) of ERISA, 29 U.S.C. § 1082(c)(8). See 29 U.S.C. § 1054(g) (emphasis added). Roadmaster did not submit the amendment to the Secretary of Labor, even though it decreased its employees' accrued benefits. The plan calculated accrued benefits based in part on hours worked on a monthly basis or monthly earnings. The hours employees worked and the wages they received between March 31 and June 27 should have counted toward their accrued benefits. By amending the plan on June 27 to cease accruing benefits as of March 31, the amendment caused the plan to disregard service and monthly earnings the employees had earned between March 31 and June 27, thus lowering the employees' accrued benefits.
 
 
 26
 Roadmaster argues that because it subsequently "clarified" the June 27 amendment (more than two years after the fact) to accrue benefits through June 30, 1986, it did not violate § 204(g) because the June 27 amendment did not decrease its employees' accrued benefits. Like the rest of Roadmaster's arguments, this argument fails. The June 27 amendment decreased accrued benefits on the day Roadmaster enacted it. Section 204(g) means what it says: accrued benefits "may not be decreased" by plan amendment absent submission to and approval by the Secretary of Labor under § 302(c)(8). This language is clear and imperative. Absent compliance with § 204(g), an amendment that decreases accrued benefits--such as Roadmaster's June 27 amendment--is ineffective. See Collins v. Seafarers Pension Trust, 846 F.2d 936, 938-41 (4th Cir.1988). Section 204(h)'s language is also clear and imperative: a plan "may not be amended" absent proper notice. Roadmaster's violations of §§ 204(g) and (h) rendered the June 27 amendment ineffective.
 
 
 27
 Because the June 27 amendment was ineffective, it follows that the plan continued in force as if it had not been amended. Therefore, Roadmaster was obligated to continue accruing benefits as the plan provided until it properly amended the plan. The subsequent "clarification" was not a proper amendment. Roadmaster did not notify its employees of the clarification as required by § 204(h). Nor did Roadmaster submit the "clarification" to the Secretary of Labor as § 204(g) requires. The "clarification," which purported to freeze benefits as of a date more than two years before its adoption, deprived employees of accrued benefits they had earned since that date without complying with §§ 204(g) or (h). In other words, the "clarification," like the original amendment, violated §§ 204(g) and (h) and was therefore ineffective.
 
 IV.
 
 28
 The plaintiffs appealed from the district court's decision not to award them costs and attorneys' fees. The plaintiffs also contend they are entitled to the costs and attorneys' fees they incurred defending Roadmaster's appeal. We first discuss the district court's decision not to award fees. A court in an action under ERISA "in its discretion may allow a reasonable attorney's fee and costs...." 29 U.S.C. § 1132(g)(1). As § 1132(g)(1) implies, we review the district court's decision whether to award fees for abuse of discretion. Nichol v. Pullman Standard, Inc., 889 F.2d 115, 121 (7th Cir.1989). The court's discretion, however, is not unlimited; and the parties have spent a great deal of effort arguing over the standard the district court should have applied in reaching its decision. The plaintiffs argue that the proper standard is a five-factor test developed in several cases in this circuit. The five factors are "(1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions." Nichol, 889 F.2d at 121 n. 9 (citing cases). The defendants, on the other hand, propose that in deciding to award fees under § 1132(g)(1), a court should examine whether the losing party's position was "substantially justified." Under this standard, borrowed from the Equal Access to Justice Act, 28 U.S.C. § 2412(d), a prevailing party is entitled to fees unless the loser's litigation position was " 'justified in substance or in the main' " or, put another way, had a " 'reasonable basis in law and fact.' " Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). Even if not frivolous, a party's position still may not be substantially justified; substantial justification means "more than merely not frivolous, but less than meritorious." Bittner v. Sadoff & Rudoy Industries, 728 F.2d 820, 830 (7th Cir.1984); see also Pierce, 487 U.S. at 566, 108 S.Ct. at 2550 ("To be 'substantially justified means, of course, more than merely undeserving of sanctions for frivlousness.' ").[1]
 
 
 29
 At various times, this circuit has applied both tests for deciding whether an award of fees and costs is appropriate under § 1132(g)(1). See, e.g., Meredith v. Navistar Int'l Trans. Corp., 935 F.2d 124, 128 (7th Cir.1991); Nichol, 889 F.2d at 121 (both citing cases). In Meredith, we decided that the difference between the two tests was insubstantial. The "bottom-line question" under either approach "is essentially the same: was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" 935 F.2d at 128. Despite the references to "good faith" and "harass[ment]," we do not read Meredith to mean that a party must actually show subjective bad faith to justify a fee award. Bittner, which proposed the substantial justification test for ERISA fee-shifting, stated that the test "create[s] a modest presumption ... in favor of awarding reasonable attorney's fees to the winning party ... unless the loser's position, while rejected by the court, had a solid basis...." Bittner, 728 F.2d at 830. Requiring a showing of subjective bad faith would defeat the purpose of this presumption (modest though it may be) because of the difficulty of proving subjective bad faith. Attorney's fee litigation is time-consuming and tedious enough without adding subjective inquiries into litigants' and attorneys' good or bad faith. Instead, we take Meredith's reference to "good faith" and "harass[ment]" simply to mean that a party who pursues a position that is not substantially justified--that is, a position without a "solid basis"--has, in an objective sense, really done nothing more than harass his opponent by putting him through the expense and bother of litigation for no good reason.
 
 
 30
 Thus, to determine whether the district court abused its discretion in deciding not to award costs and fees, we must examine the reasonableness of Roadmaster's arguments in that court and the court's analysis of those arguments. Roadmaster has made this easier by conceding that "[i]f Roadmaster didn't give proper notice that is sufficient reason to order the company to accrue benefits after June 30 because the company violated § 204(h)." In other words, Roadmaster has conceded that if it loses on the § 204(h) issue, it loses the case. This concession is correct. As we have noted, an amendment reducing the rate of future benefit accruals adopted without proper notice under § 204(h) is ineffective. Therefore, we need only examine Roadmaster's arguments in defense of the plaintiffs' § 204(h) claim; if the § 204(h) question is dispositive, there is no substantial justification for litigating without a solid defense to that claim, no matter how compelling Roadmaster's § 204(g) arguments might be (although we are not saying that those arguments actually are compelling).
 
 
 31
 Judged by the standard we have set forth, we think the district court abused its discretion by refusing to award fees. The district court's only comment on the legal sufficiency of the defendants' litigating position was the vague statement that "defendants offered a plausible explanation for their actions which struck the court as having some merit." The court did not explain what the defendants' explanation was, why it was "plausible," or why the court thought it might have any merit. An abuse of discretion standard presupposes a reasoned exercise of discretion; lack of explanation is often sufficient in itself to constitute an abuse of discretion where the reasons for a decision left unexplained are not apparent from the record. Cf. United States v. Beasley, 809 F.2d 1273, 1279 (7th Cir.1987); Horn v. Transcon Lines, Inc., 898 F.2d at 592.
 
 
 32
 There is no need to remand this case for further explanation, however, because it is clear the defendants' litigating position in the district court was not substantially justified. The facts in this case were clear, uncomplicated, and undisputed. Roadmaster amended its retirement plan on June 27, 1986 to cease accruing benefits as of March 31, 1986; Roadmaster notified its employees by posted notice, rather than by individual written notice, well after the amendment's effective date. Roadmaster argued in the district court that letter notice to the union coupled with posted notice to its employees complied with § 204(h), which Roadmaster says vaguely requires only "written notice." According to Roadmaster, an employer should be able to count on a union to convey information to its members. That is part of the union's job, and union leaders have an interest in doing their jobs properly so that they may remain union leaders. It would be costly and inefficient, argues Roadmaster, to require a further separate written notice to each employee, and one should not assume Congress wanted to impose inefficiencies on businesses.
 
 
 33
 Whatever one thinks of Roadmaster's assumption about Congress' intent (and certainly many businessmen traversing the maze of regulatory statutes Congress has enacted do not assume Congress cares one whit about efficiency), the problem is that Roadmaster's argument bears no relation to § 204(h)'s actual language. Section 204(h) does not simply require "written notice," nor does it speak about "efficient communication" or set forth a cost/benefit analysis to guide plan administrators' decisions. Section 204(h) requires "a written notice ... to each participant...." 29 U.S.C. § 1054(h) (emphasis added). And § 204(h) does not lessen this requirement when a plan administrator gives notice to a union. Section 204(h) requires a plan administrator to provide "a written notice ... to each participant ... and each employee organization representing participants in the plan...." Id. (emphasis added).
 
 
 34
 Congress could not have been more clear. The Department of Labor's regulations concerning notice echo § 204(h)'s theme. Those regulations provide that when an employer must provide information to plan participants, it must "use measures reasonably calculated to ensure actual receipt of the material by plan participants," such as mail or in-hand delivery; however, "in no case is it acceptable merely to place copies of the material in a location frequented by participants." 29 C.F.R. § 2520.104-b. Accepting Roadmaster's position regarding posted notice requires mangling § 240(h) and disregarding the Department of Labor's regulations.
 
 
 35
 Besides contorting § 204(h), Roadmaster's position in the district court failed to respond to the other problem with the form of Roadmaster's notice. Section 204(h) requires notice to "each" participant. Roadmaster has admitted that the posted notice was not available to all of its employees. Therefore, Roadmaster essentially has admitted the posted notice (even if posted notice could comply with § 204(h)) did not comply with § 204(h) because Roadmaster did not provide that notice to "each" participant.
 
 
 36
 Besides being insufficient in form, Roadmaster's notice was untimely. Notice that came more than two months after the amendment's effective date did not comply with § 204(h)'s requirement that notice be provided at least 15 days before the amendment's effective date. Roadmaster argued in the district court that its "clarification" of the amendment to provide benefit accrual through June 30, 1986, made the notice timely because Roadmaster provided notice more than 15 days before June 30, 1986. But the "clarification" did not make Roadmaster's litigation position substantially justified. Section 204(h) provides that the notice must set forth the amendment's effective date. The notice to the employees set forth March 31, not June 30, as the effective date; nothing in the "clarification" cured this defect in the notice. Also, the "clarification" does not address the problems with the form of notice Roadmaster gave; as we have seen, there was no substantial justification for the defendants' arguments that posted notice that was not even available to all of Roadmaster's employees complied with § 204(h).
 
 
 37
 Most important, Roadmaster did not "clarify" the plan amendment until after the plaintiffs filed their summary judgment motion, more than two years after the original amendment and one and one-half years after the plaintiffs filed their suit. Before the clarification, even if the form of notice had been proper, Roadmaster had no basis at all for claiming that the notice to its employees was timely. Therefore, even if the "clarification" provided a plausible basis for arguing that the notice was timely, Roadmaster had no defense to the plaintiffs' suit until it "clarified" the amendment one and one-half years after the plaintiffs filed their suit. There is no justification (substantial or otherwise) for litigating for one and one-half years without even a prayer of a defense. This suit was unnecessary; Roadmaster's position was not substantially justified; Roadmaster should pay the costs and attorneys' fees the plaintiffs incurred in the district court.
 
 
 38
 Besides allowing costs and attorneys' fees in the district court, § 1132(g)(1) also gives courts of appeals the discretion to award costs and attorneys' fees on appeal. See Meredith, 935 F.2d at 128; Nachwalter v. Christie, 805 F.2d 956, 961 (11th Cir.1986) (citing cases); cf. Plumbers Pension Funds v. Domas Mech. Contractors, 778 F.2d 1266, 1271 (7th Cir.1985) (awarding attorney's fees on appeal under 29 U.S.C. § 1132(g)(2)). On appeal, Roadmaster repeats its argument that notice to the union coupled with posted notice to the employees complies with § 204(h) because that form of notice was the most efficient way to convey information about the plan amendment to the employees. For reasons we have already discussed, that argument has no more "solid basis," see Bittner, 728 F.2d at 830, in this court than it did in the district court. Furthermore, Roadmaster's opening brief on appeal does not even address the notice's untimeliness and the fact that the notice was not available to "each" employee.[2] Roadmaster's appeal was not substantially justified. Therefore, Roadmaster must pay the plaintiffs' costs and attorneys' fees incurred in defending Roadmaster's appeal. However, the plaintiffs are not entitled to the costs and attorneys' fees incurred in submitting their supplemental brief on appellate jurisdiction. Although we have jurisdiction, the question is close. The parties should have flagged this issue before we did. The plaintiffs' failure to do so should not be rewarded with an award of costs and attorneys' fees.
 
 
 39
 One final word on the performance of Roadmaster's attorney, David F. Loeffler. Loeffler submitted a 23-page reply brief in Roadmaster's appeal that contains 55 footnotes, many long and textual. Loeffler's reply brief almost certainly violates Fed.R.App.P. 28(g)' § 25-page limit on reply briefs. We have repeatedly warned litigants and attorneys not to use textual footnotes to evade page limits. E.g., Fleming v. County of Kane, 855 F.2d 496, 498 (7th Cir.1988); Westinghouse Electric Corp. v. NLRB, 809 F.2d 419, 425 (7th Cir.1987). Also, much of the reply brief's excess verbiage consists of questionable personal jabs at opposing counsel. In the future, this kind of "advocacy" will be treated with harsher penalties.
 
 V.
 
 40
 For the reasons set forth above, we agree with the district court that Roadmaster violated §§ 204(g) and (h) of ERISA and therefore affirm the district court's decision rescinding the June 27, 1986 amendment to Roadmaster's retirement plan and ordering Roadmaster to accrue lost benefit accruals as provided in the plan. We reverse the district court's decision not to award the plaintiffs the costs and attorneys' fees incurred in the district court and remand to the district court to calculate the amount of those costs and fees. Finally, we order Roadmaster to pay plaintiffs the costs and attorneys' fees they incurred because of Roadmaster's appeal (but not to include supplemental briefing on jurisdiction). Plaintiffs shall file a statement of those costs and fees with this court within 15 days after this decision.
 
 
 
 *
 Hon. Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 A court may also decline to award costs and fees under this approach if " 'special circumstances make an award unjust.' " Bittner, 728 F.2d at 830. Roadmaster does not argue that any special circumstances exist, and the record does not reveal any, so we need not be concerned about special circumstances in this case
 
 
 [2]
 Roadmaster does address these two problems in its reply brief, arguing that the "clarification" of the amendment made the original notice timely and that if benefits should accrue at all after June 30, 1986, they should accrue only to employees who were not on the job and not exposed to the notice while it was posted. As we have discussed above, reliance on the "clarification" does not substantially justify Roadmaster's position. Moreover, Roadmaster offers no authority for its novel argument that ERISA in effect allows an employer to cease accruing benefits for some employees but not others depending on which employees might have been given notice (a position at odds with § 204(h)'s imperative language that a plan "may not be amended" absent proper notice). In any event, Roadmaster waived these arguments by raising them for the first time in its reply brief. See Reynolds v. East Dyer Dev. Co., 882 F.2d 1249, 1253 n. 2 (7th Cir.1989). Waived arguments do not justify a party's litigation position