Donald **BREWER** and Melissa Brewer, Plaintiffs–Appellees,

v.

**PROTEXALL, INC.,** Defendant– Appellant.

Nos. 94–2920, 94–3067.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1995.

Decided March 22, 1995.

---

John W. Robertson (argued), Carl E. Hawkinson, Barash & Stoerzbach, Galesburg, IL, for Donald Brewer.

John W. Robertson, Barash & Stoerzbach, Galesburg, IL, for Melissa Brewer in No. 94–2920.

Bruce Thiemann (argued), Peoria, IL, for Protexall, Inc.

John W. Robertson, Carl E. Hawkinson, Barash & Stoerzbach, Galesburg, IL, for Melissa Brewer in No. 94–3067.

Before POSNER, Chief Judge, ROVNER, Circuit Judge, and MORAN, District Judge.[*]

ILANA DIAMOND ROVNER, Circuit Judge.

In this ERISA action, Donald Brewer sued his former employer, Protexall, Inc., after it refused to cover $7986 in health insurance claims he had submitted under its health benefits plan. *See* 29 U.S.C. § 1132(a)(1)(B). The district court granted Brewer's motion for summary judgment and also awarded him $41,965 in attorney's fees. Protexall appeals, and we affirm.

## I.

Brewer began his employment with Protexall, a Galesburg, Illinois manufacturer of industrial clothing, in October 1988. Protexall maintains a self-funded health benefits plan that is administered by Self Insured Services Company ("SISCO"). After six months of employment, Brewer became eligible to enroll in Protexall's health benefits plan without having to answer any questions about his own or his family's health. Opting instead to retain the coverage he had through his previous employer, Brewer did not originally enroll in the Protexall plan, and Protexall agreed to pay the premiums on his existing policy. When that coverage lapsed in June 1989, Brewer obtained a temporary policy through Time Insurance, and then joined the Protexall plan on September 21, 1989. Protexall began deducting premiums from his paychecks at that time. In response to the claims now at issue, however, SISCO informed Brewer on March 9, 1990 that he was not covered because he had failed to provide adequate proof of his own and his family's good health at the time of his enrollment. Brewer admits that he did not provide such proof, but argues that the plan did not require him to do so. The parties' dispute centers on whether the plan in effect in September 1989 required proof of good health as a condition of coverage.

## II.

On April 2, 1990, after SISCO had denied Brewer's claims, his attorney asked Protexall to provide a copy of its plan document, and Protexall responded by sending a plan document dated October 1988. (R. 22, Ex. 11.)[1] That document did not require proof of good health from employees who enrolled within thirty-one days of becoming eligible for coverage, but as to employees who enrolled after that time, provided:

---

[*] The Honorable James B. Moran, Chief Judge of the United States District Court for the Northern District of Illinois, sitting by designation.

1. The plan document indicated that its effective date was June 1, 1988. *Id.* at 1.

The Company reserves the right to require evidence of good health, obtained at the individual's expense, satisfactory to the Company from any eligible person who makes application for Participant coverage under the Plan more than thirty-one (31) days after the date of his eligibility; his coverage shall become effective on the date such evidence of good health is approved by the Company, except where he had comparable health coverage elsewhere which terminates. In this case, application for enrollment may be made within twenty (20) days of the other coverage termination date without submission of evidence of good health....

(*Id.* at 22.)

Because, as all parties agree, Brewer applied for coverage less than twenty days after his Time policy had terminated, this clause appears to exempt him from the proof of good health requirement. But Protexall counters that interpretation with two arguments. First, it contends that the October 1988 plan was not actually in effect when Brewer enrolled in September 1989 because it had been superseded by an amended plan that did not contain the twenty-day window for previously-covered employees. Second, Protexall argues that even if the pre-amendment language controls, Brewer does not in any event qualify for the exception because his temporary Time policy was not "comparable ... coverage." Like the district court, we reject both of these arguments.[2]

The parties agree both that the October 1988 plan was amended and that the amended plan does not include an exception for

employees who apply within twenty days of terminating a comparable policy. (*See* R. 22 Ex. A1.)[3] The parties also agree, however, that the amended plan was not executed until November 1990, more than a year after Brewer had enrolled. (*Id.*) Indeed, Protexall even admits that the amendment had not been reduced to any "producible" written form prior to Brewer's enrollment. In responding to Brewer's motion for summary judgment, for example, Protexall wrote the following about its compliance with Brewer's April 1990 request to receive a copy of the plan document:

[A] response was made to this request on April 5, 1990, at which time copies of the Plan document adopted October 25, 1988, and of the First Amendment and Second Amendment to the Plan document were forwarded to [Brewer's attorney]. At that time, these three documents constituted all of the written documents adopted and executed by PROTEXALL, INC. constituting the Plan.

(R. 21 at 10.)[4] SISCO Vice President Willy Schiller corroborated that the amendment had not been reduced to writing when she testified that the revised plan dated October 1, 1990 was the first "formal document" in which the twenty-day window had been deleted. (R. 22, Ex. A, para. 10.)

■ Protexall contends, however, that the amendment was effective in October 1989 even though the amended plan document had not yet been executed and the amendment had not been reduced to "producible" written form. Protexall suggests that two facts demonstrate that the amendment was in effect at

---

2. The parties disagree about the standard under which SISCO's denial of benefits should be reviewed. In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator authority to determine eligibility for benefits or to construe the terms of the plan," in which case the administrator's determination is reviewable for an abuse of discretion only. The parties disagree about whether the plan at issue here grants the administrator discretion to construe the plan terms. Because Protexall's argument fails under either standard, we need not resolve that controversy.

3. Indeed, the amended plan also seems to eliminate the exception for employees who apply within 31 days of becoming eligible. It provides only:

Coverage under this Plan is not automatic and is subject to all conditions and limitations of the Plan. The Company reserves the right to require evidence of good health, obtained at the individual's expense, satisfactory to the Company from all eligible persons who make application for coverage under the Plan. *Id.*

4. The First and Second Amendments did not affect the eligibility provision at issue here.

the earlier date. First, Protexall points to Schiller's testimony that Protexall's president, Larry Williams, informed her of the change in late 1988 or early 1989 and told her that it was to take effect in January 1989. (*Id.* at ¶¶ 5, 9.) Second, Protexall refers to the fact that drafts of the amendment had been prepared and were being exchanged between itself and SISCO prior to October 1989.[5]

But Protexall's argument is easily answered; neither the oral communications to SISCO nor the exchange of draft amendments suffices to amend the plan because neither satisfies the plan's own requirements for amendment. The plan defines "amendment" in this way:

> The term "Amendment" means a formal document that changes the provision of the Plan Document, duly signed by the authorized person or persons as designated by the Plan Administrator.

(R. 22 Ex. A11 at 7.)[6] Under the plan's own terms then, any measure that has not been reduced to a "formal document" and "duly signed" by an "authorized person" could not have constituted an amendment of the plan.

5. In support of its argument that the amendment was effective in October 1989, Protexall also emphasizes the fact that SISCO had begun to apply the amendment in processing claims as early as January of that year. Far from settling this disputed issue, however, the propriety of SISCO's reliance on the amendment in 1989 is the very question we have been asked to resolve.

Protexall also argues that the amendment was effective in October 1989 because it was reflected in an addendum to the Plan Summary that was posted on an employee bulletin board in January 1989. But Protexall raised this argument for the first time in its reply brief. In its opening brief, Protexall referred to the Plan Summary only in responding to the district court's finding that the amendment could not have been effective because it *did not* appear in the Plan Summary. The converse argument—that the amendment was effective because it did appear in the Plan Summary—is not only waived (*see Morissette v. Peters*, 45 F.3d 1119, 1121 n. 2 (7th Cir.1995)), it is also foreclosed by the express provision in the Plan Summary that "[t]he Plan Document takes precedence over this booklet." (R. 22 Ex. A2 at 1.) That provision certainly seems to preclude the possibility that the plan could be amended by way of the Plan Summary.

6. The same definition of "amendment" is contained in the October 1990 plan document. (*See* R. 22, Ex. A1.)

Because, as Protexall itself admits, no amendment meeting those requirements existed until October 1990, the October 1988 plan was in effect when Brewer enrolled in September 1989.[7]

The only remaining question, then, is whether Brewer qualified for the twenty-day exception to the proof of good health requirement. In that regard, the parties dispute whether Brewer's temporary Time insurance policy constituted "comparable coverage" for purposes of that exception. In resolving this dispute, which requires us to interpret a health benefits plan governed by ERISA, we apply the federal common law rules of contract interpretation. *Bullwinkel v. New England Mut. Life Ins. Co.*, 18 F.3d 429, 431 (7th Cir.1994); *McNeilly v. Bankers United Life Assurance Co.*, 999 F.2d 1199, 1201 (7th Cir.1993). Those rules direct us to "interpret ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience" and to construe ambiguous plan terms strictly in favor of the insured. *Bullwinkel*, 18 F.3d at 431; *see also McNeilly*, 999 F.2d at 1201.[8]

7. The parties dispute whether or not Brewer was informed by Protexall's benefits coordinator that it was necessary to submit proof of good health. But even resolving that dispute in Protexall's favor does not bolster its position. Under the plan's own terms, an oral representation cannot amount to an amendment of the plan.

8. In *Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 311–13 (7th Cir.1992), we examined whether the Supreme Court's discussion in *Firestone* of the appropriate standard for reviewing the determinations of plan administrators precludes reliance on the common law rule that ambiguities in insurance contracts should be resolved in favor of the insured. We determined that it does not, explaining that the requirement of deference to a particular party's interpretation is not inconsistent with reliance on presumptions that might favor one or the other party. 978 F.2d at 311–12. In other words, even if an administrator has discretion to construe the terms of a plan, the administrator can abuse its discretion by failing to apply the rule that ambiguities must be resolved in favor of the insured. *See Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539–41 (9th Cir.1990), *cert. denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990). We therefore held in *Phillips* that even after *Firestone* "a plan participant cannot be denied benefits under a limitation which is ambiguous as to its application to his benefit claim." 978

■ As we have previously explained, "contract language is ambiguous if it is subject to more than one reasonable interpretation." *McNeilly*, 999 F.2d at 1201 (citing *Auto–Owners (Mut.) Ins. Co. v. L.P. Cavett Co.*, 882 F.2d 1111, 1113 (7th Cir.1989)). We agree with the district court that the term "comparable" as used in the relevant clause of the Protexall plan clearly meets that test. True, Protexall's contention that the Time policy was not "comparable" because it was a temporary non-renewable policy is certainly plausible. But so is the district court's suggestion that "comparable" may as well refer to "the types of claims covered, the limits of coverage, the deductibles, exclusions, or any combination of those." (June 25, 1992 Order at 10.) And the plan itself does nothing to clarify the meaning of "comparable"; the term does not appear anywhere in the plan's thirteen pages of "Definitions" (which amount to a quarter of its total length). Because the term is subject to more than one reasonable interpretation and because it is not clarified anywhere in the plan itself, we find that it is indeed ambiguous. And because at least one of the reasonable interpretations of "comparable" includes Brewer's temporary policy, we must construe the term in his favor. Having determined both that the October 1988 plan, which included the twenty-day exception, was in effect at the time of Brewer's enrollment and that his Time policy constitutes "comparable coverage" for purposes of that exception, we must affirm the district court's grant of summary judgment in Brewer's favor.

### III.

■ Protexall also contests the district court's award to Brewer of $41,965 in attorney's fees. 29 U.S.C. § 1132(g)(1), ERISA's fee shifting provision, provides that:

(1) In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

As the statute suggests, we review the district court's determination as to fees for an abuse of discretion only. *Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 990 (7th Cir.1993). This court has articulated two tests for assessing whether an award of fees under section 1132(g) is appropriate. *See Production & Maintenance Employees' Local 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1404–05; *Meredith v. Navistar Int'l Transp. Corp.*, 935 F.2d 124, 128 (7th Cir. 1991) (both collecting cases). The first looks simply at whether the losing party's position was substantially justified,[9] and the second, applied by the district court in this case, looks to the following factors:

(1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions.

*Roadmaster*, 954 F.2d at 1404 (quoting *Nichol v. Pullman Standard, Inc.*, 889 F.2d 115, 121 n. 9 (7th Cir.1989)); *see also Anderson v. Flexel, Inc.*, 47 F.3d 243, 250 (7th Cir.1995). Because we have found both tests to be acceptable in making the fees determination (*Roadmaster*, 954 F.2d at 1405; *Meredith*, 935 F.2d at 128), the district court's application of the five factor test in this instance was perfectly appropriate.

In assessing those five factors, the district court found:

The defendant, throughout this lawsuit, has stubbornly adhered to its position that a phantom amendment to its employee benefit plan applied to exclude the plaintiff from the Plan, even though that amendment was not reduced to writing until more than a year after the plaintiff applied to the Plan. Furthermore, because the Plan is a self-funded single employer plan, attorney's fees in this case would be paid

---

F.2d at 313; *see also McNeilly*, 999 F.2d at 1201, n. 5; *Doe v. Group Hospitalization and Medical Servs.*, 3 F.3d 80, 89 (4th Cir.1993); *but see Brewer v. Lincoln Nat'l Life Ins. Co.*, 921 F.2d 150, 153–54 (8th Cir.1990), *cert. denied*, 501 U.S. 1238, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991).

9. In *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 830 (7th Cir.1984), which applied the substantial justification test, we found there to be a "modest presumption ... in favor of awarding reasonable attorney's fees to the winning party." *See also Roadmaster*, 954 F.2d at 1405.

by Protexall, the party at fault, rather than by the assets of a fund. Finally, the court agrees with the plaintiffs that Protexall is probably in a much better position to pay the attorney's fees than they are. (June 25, 1992 Order at 15; *see also* August 8, 1994 Order at 2) ("[D]efendant's position in this case was not reasonable and ... the defendant is capable of paying an award of attorney's fees that should discourage it and others from taking similar positions in the future.") The district court's assessment was not an abuse of its discretion. We agree that Protexall's position lacked merit, that Protexall is in a better position than the Brewers to bear the costs of this litigation, and that Protexall and others ought to be discouraged from litigating on the basis of similarly unreasonable positions in the future. The Brewers should not be required to bear attorney's fees totalling nearly six times the cost of their original claims, which accrued merely as a result of Protexall's unwarranted intransigence. Indeed, because Protexall's position was similarly unjustified on appeal, the Brewers are entitled under section 1132(g)(1) to reimbursement for the costs and fees they incurred before this court as well. *See Central States, Southeast & Southwest Areas Pension Fund v. Joe McClelland, Inc.*, 23 F.3d 1256, 1259 (7th Cir.1994); *Roadmaster*, 954 F.2d at 1407 ("[section] 1132(g)(1) also gives courts of appeals the discretion to award costs and attorneys' fees on appeal.")

Finally, Protexall contests the district court's decision to award fees in the amount of $150 per hour for Brewer's lead counsel, John W. Robertson, and $100 per hour for Robertson's associate. Protexall argues that those figures were erroneous because they do not reflect Robertson's *average* rate, which is actually somewhat lower. But the district court's finding was supported by the affidavits of three attorneys who practice in the same market and who testified that the fee was reasonable in light of Robertson's experience. The court also had before it Robertson's own affidavits as well as financial records from his practice. Based on this evidence, the district court concluded that the chosen figures reflected Robertson's market rate for comparable work. The court found that the lower rates relied on by Prote-

xall were either discounted amounts charged to Robertson's regular clients or compensation he had received in non-ERISA cases. (*See* Aug. 8, 1994 Order at 2–3.) The district court's decision, both well-reasoned and grounded in the evidence, was not an abuse of its discretion. *See, e.g., McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 519 (7th Cir.1993); *Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 698 (7th Cir.1991). We also reject Protexall's argument that the district court abused its discretion in awarding fees for the time counsel expended in obtaining the affidavits of the three attorneys who testified in support of the Brewers' fees petition. Contrary to Protexall's argument, those affidavits were not irrelevant. *See McNabola*, 10 F.3d at 519.

### IV.

For the reasons stated herein, the district court's grant of summary judgment against Protexall is AFFIRMED, as is its award of attorney's fees to the Brewers. Protexall shall also reimburse the Brewers for their reasonable costs and attorney's fees on appeal. The Brewers are to submit a statement of those costs and fees to this court within fifteen days.