**NORTHWEST ADMINISTRATORS, INC., Plaintiff-Appellant,**

v.

**B.V. & B.R., INC., a California corporation, also known as BV and BR, Inc., and doing business as Mid-Valley Ice Company, also known as Mid Valley Ice, Defendant-Appellee.**

**NORTHWEST ADMINISTRATORS, INC., Plaintiff-Appellee,**

v.

**B.V. & B.R., INC., a California corporation, et al., Defendant-Appellant.**

Nos. 85–2667, 85–2731.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1986.

Decided March 20, 1987.

Michael J. Carroll, Jeffrey Allen, San Francisco, Cal., for plaintiff-appellant.

Robert L. Rediger, Sacramento, Cal., for defendant-appellee.

Before WALLACE, POOLE and WIGGINS, Circuit Judges.

WALLACE, Circuit Judge:

Northwest Administrators, Inc. (Northwest) brought suit against B.V. & B.R., Inc., d/b/a/ Mid-Valley Ice Company (Mid-Valley) to force Mid-Valley to make pension fund contributions for seasonal employees. The district court, which had jurisdiction pursuant to section 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132, ruled in favor of Mid-Valley on a motion for summary judgment, finding no material facts in dispute on the issue of whether the parties intended contributions to be made for seasonal employees. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand.

I

Mid-Valley manufactures and sells ice. Since 1974, Mid-Valley has entered into a series of collective bargaining agreements with the Teamsters Union, Local 137 (union). Pursuant to those agreements, Mid-Valley was required to pay pension fund contributions to the Western Conference of Teamsters Pension Trust Fund. Northwest administers that fund.

Due to the cyclical nature of the demand for ice, Mid-Valley hires a number of seasonal employees during its peak months. Seasonal employees, under the agreements, are employees who work less than six months at one time. The collective bargaining agreement in effect between 1974 and 1977 contained separate pension contribution schedules for seasonal and full-time employees. In 1977, the parties entered into a new collective bargaining agreement that did not contain separate provisions for the two classes of employees. Instead, the new agreement had a single contribution schedule effective for "each member of the bargaining unit." When that agreement became effective, Mid-Valley discontinued making pension contributions on behalf of its seasonal employees. The 1977 agreement was renewed, with minor changes, in 1980 and 1982, and still remains in effect.

In 1984, Northwest discovered the lapse in payments for seasonal employees. The trustee brought the instant action seeking repayment of the allegedly delinquent contributions.

The district court found that the bargaining agreement was "ambiguous" on the question of whether the parties intended Mid-Valley to make pension contributions on behalf of its seasonal employees. The court then applied the rule of *contra proferentem* to hold that the contract had to be construed against Northwest "as the body charged with enforcement of the contract ... as to pension collections." The district court ruling was also based on two other grounds: (1) that no contributions had been made since 1977, illustrating the parties' intent not to require contributions on behalf of seasonal employees, and (2) that it would have been an "economic absurdity" for Mid-Valley to agree to make contributions for seasonal employees under the payment schedule of the 1977 agreement without "demanding inclusion of such language in the ... agreement[ ]."

II

Granting a summary judgment is reviewed de novo. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). To ascertain the meaning of this collective bargaining agreement, we first examine its express written terms. *Waggoner v. C & D Pipeline Co.*, 601 F.2d 456, 458 (9th Cir. 1979).

■ Each side argues that the plain language of the agreement supports summary judgment in its favor. The pension provision of the agreement, however, neither specifically excludes nor includes seasonal workers. Instead, it calls for contributions "on account of each member of the bargaining unit." The agreement nowhere defines the "bargaining unit." This ambiguity is not resolved by reference to other provisions of the agreement. The union recognition clause indicates that the union is the bargaining agent for all employees "covered by the jurisdiction awarded" the union, but fails to define the scope of that

jurisdiction. "Seasonal employees" are mentioned several times in other provisions of the agreement, but in a manner that sheds no light on the scope of the pension plan. We agree with the district court that the express written pension plan agreement is ambiguous as to whether the parties intended contributions to be made on behalf of seasonal employees.

█ When the language of a collective bargaining agreement is unclear, as here, the court must determine the "parties' actual intent" at the time of the agreement's execution. *Kemmis v. McGoldrick*, 767 F.2d 594, 597 (9th Cir.1985) (*Kemmis II*). In this case, however, determining the parties' actual intent raises issues of material fact that could not properly be resolved, as the district court attempted, by summary judgment.

█ In an apparent effort to determine the parties' intent, the district court first focused on the doctrine of *contra proferentem* (against the profferer) and construed the contract against Northwest. Although we need not rule out its application in all similar cases, we doubt that this doctrine is of much direct assistance in determining the issue of intent. *See* E. Farnsworth, *Contracts* § 7.11 at 500 (1982) (doctrine of *contra proferentem* "can scarcely be said to be designed to ascertain the meanings attached by the parties ... [to a contract's terms]"). We recognize that interpreting a document against the party that supplied the language is not an unusual tool in common law contract interpretation. But to the extent it may assist in determining the intent of the parties, caution must be exercised when applying this doctrine to a labor contract. A collective bargaining agreement is governed by the detailed provisions of the Labor Management Relations Act, 29 U.S.C. §§ 141–187, and ERISA. It is not "governed by the same old common-law concepts which control ... private contracts." *Transportation-Communication Employees Union v. Union Pacific R.R.*, 385 U.S. 157, 160–61, 87 S.Ct. 369, 371, 17 L.Ed.2d 264 (1966). Law other than federal labor law may assist in the interpretation of collective bargaining agreements only if it

"effectuates the policy [that] underlies federal labor legislation." *See Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1109 (9th Cir.1979).

█ We conclude that the district court's reliance on the doctrine of *contra proferentem* was erroneous. As stated earlier, we doubt that the doctrine can be of any material help in determining the parties' actual intent in entering into the collective bargaining agreement in this case. Nor did the district court indicate how reliance on the doctrine serves to advance any principle of federal labor law. In addition, the district court made no findings as to whether Northwest was directly or indirectly responsible for the language that caused the ambiguity. The doctrine of *contra proferentem* is based on the commonsense notion that ambiguous language should be interpreted against the drafter because that party was in the best position to prevent the ambiguity; that is, "the provision should be construed less favorably to that party which selected the contractual language." *United States v. Seckinger*, 397 U.S. 203, 216, 90 S.Ct. 880, 888, 25 L.Ed.2d 224 (1970). The parties dispute who was responsible for the language in the pension clause. The district court could consider application of the doctrine of *contra proferentem* if it finds that Northwest was directly or indirectly responsible for the disputed language, that application of the doctrine will assist in determining the parties' intent, and that application of the doctrine would effectuate the policy underlying ERISA in the particular circumstances before the court.

█ The second ground upon which the district court relied was that Mid-Valley stopped making contributions in 1977, but that Northwest did not object until 1984. This fact, however, is of limited relevance if, as claimed, cessation of payment was due to some unwritten understanding between Mid-Valley and the union. While evidence of the conduct of the parties during bargaining and contract formation is relevant and should be given great weight, *Kemmis II*, 767 F.2d at 597, an oral agreement or tacit understanding between Mid-Valley and the union that conflicts with or alters the meaning of the written agree-

ment should not be considered. *See Kemmis v. McGoldrick*, 706 F.2d 993, 996–97 (9th Cir.1983); *see also Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir.1986). A contrary rule would invite "collusion and controversy to the detriment of the employee beneficiaries." *Kemmis v. McGoldrick*, 706 F.2d at 996.

The final reason that the district court gave for granting summary judgment was that it would have been an "economic absurdity" for Mid-Valley to agree to an increase in contributions for seasonal employees without demanding inclusion of appropriate language in the collective bargaining agreement. Although we do not doubt that such a consideration may play a strong part in the finding of facts, it is not dispositive of whether a disputed material fact remains to be resolved. Indeed, such a determination as made here is, itself, a finding of fact, not allowable for summary judgment.

### III

The union requested attorneys' fees. Since attorneys' fees are premised on success on the merits and we are remanding this case for further consideration, attorneys' fees are not warranted.

REVERSED AND REMANDED.