15 F.3d 1088
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 RESTAURANT EMPLOYEES, BARTENDERS & HOTEL SERVICE EMPLOYEES
HEALTH & WELFARE PENSION TRUST, Plaintiff-Appellee,
v.
H.E. FERRYMAN, a/k/a Ferryman Enterprises,
and
Quality Hotel Tacoma Dome, Defendants-Appellants.
 No. 92-36642.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 6, 1994.
Decided Feb. 7, 1994.
 
 Before: CANBY and T.G. NELSON, Circuit Judges and SHUBB, District Judge.*
 MEMORANDUM**
 H.E. Ferryman appeals the district court's grant of summary judgment for the Restaurant Employees, Bartenders & Hotel Service Employees Health & Welfare & Pension Trust Fund (the Fund), which held that under the terms of a collective bargaining agreement (CBA), Ferryman must make payments into the Fund for new employees who are not yet eligible to receive health benefits from the Fund. We affirm.
 DISCUSSION
 We review de novo a district court's interpretation of a collective bargaining agreement. Operating Engineers Pension Trust v. Giorgi, 788 F.2d 620, 622 (9th Cir.1986). In interpreting a collective bargaining agreement, we look to federal law. Northwest Administrators, Inc. v. B.V. & B.R., Inc., 813 F.2d 223, 226 (9th Cir.1987).
 * The contract provisions at issue are sections 19.01 and 19.02 of the 1989-90 collective bargaining agreement:
 19.01: The Employer shall provide health and dental insurance for eligible employees who have completed the review period....
 19.02 Contributions required For employees covered by the Restaurant Employees Welfare Fund, the employer shall pay the appropriate amount specified below each month for each employee who works sixty-five hours or more during such month to the Restaurant Employees, Bartenders, and Hotel Service Employee Welfare Fund.
 Ferryman argues that these sections, interpreted in light of the entire CBA, unambiguously obligate him to make payments into the fund only for those employees who actually are eligible to receive health benefits from the Fund. We disagree.
 Although the term is not defined anywhere in the agreement, Ferryman argues that the "review period" mentioned in section 19.01 is the same as the 90 day probationary period new employees must complete in order to begin to be granted seniority under section 11.01 of the CBA. Thus, he contends, section 19.01 unambiguously obligates him to make Trust Fund contributions only for employees who have worked at least 90 days.
 We reject Ferryman's argument. Even if "review period" refers to the probationary period, as Ferryman argues, the clause remains ambiguous. The clause does not, as Ferryman asserts, require him "to pay Trust Fund contributions 'for eligible employees who have completed the review period.' " It requires him to "provide insurance" for those employees. Under the terms of the Benefit Plan no employee can receive health benefits until he or she has worked three months "during which ... the required contribution is paid by the employer." Therefore, even if the "review period" is identical with the three-month probationary period, the clause may require Ferryman to make payments as soon as an employee is hired in order to provide insurance for that employee at the end of the review period. While perhaps not the only possible interpretation of the clause, this is a plausible one. At best, the clause is ambiguous. See Castaneda v. Dura-Vent Corp., 648 F.2d 612, 619 (9th Cir.1981) (contract is ambiguous if it is susceptible to more than one interpretation).[1]
 Ferryman next contends that section 19.02 unambiguously obligates him to pay into the Fund only for employees who are "covered." He reads "covered" to mean employees who have worked the necessary number of hours for three months, citing Art. III p 2 of the Benefit Plan Instrument:
 You will be covered under this Benefit Plan on the 1st of the month following three consecutive months in which you work 65 or more hours per months for one or more Employers contributing to this Plan.
 This attempt to give unambiguous meaning to the term "covered" is unavailing. Section 19.02 refers to employees "covered by the ... Fund." Art. III p 2 of the Benefits Plan, from which Ferryman borrows, refers to coverage under the Benefit Plan, not coverage under the Fund. "Covered by the ... Fund" could very well mean "participating in the Fund's insurance program ... as opposed to some other insurance program."
 This is a natural reading, especially in light of testimony of the Union representative who negotiated the CBA that it is his belief that the language of the section was mistakenly copied verbatim from a different collective bargaining agreement between the union and the Sheraton Hotel (which offered a variety of health plans for its employees).
 Thus, there are plausible interpretations of both disputed sections that conflict with those proposed by Ferryman, and that are consistent with the meaning the district court gave them. The court did not, as Ferryman contends, "eviscerate, rather than define" the terms of the contract. The contract is ambiguous. See Castaneda v. Dura-Vent Corp., 648 F.2d at 619.
 II
 Because the terms of the CBA are ambiguous, we must consider extrinsic evidence, including past practice, in order to interpret it. Operating Engineers Pension Trusts v. B & E Backhoe, Inc., 911 F.2d 1347, 1352 (9th Cir.1990):
 A collective bargaining agreement is not governed by the same principles of interpretation applicable to private contracts.... [I]t cannot be interpreted without considering the scope of other related collective bargaining agreements as well as the practice, usage and custom pertaining to all such agreements.
 Id. (emphasis added).
 * Ferryman's argument that the existence of a "zipper" clause in the contract precludes our looking to extrinsic evidence is without merit. A zipper clause may indeed, as Ferryman argues, "make the written contract the exclusive statement of the parties' rights and obligations." Here, however, the Fund is not attempting to add new obligations to the agreement. Cf., U.A.W. v. N.L.R.B., 765 F.2d 175, 180 n. 21 (D.C.Cir.1985). The Fund is attempting to clarify what obligations the agreement imposes. In such a case, it is appropriate to look to past practice to interpret the contract. See Martinsville Nylon Employees Council v. N.L.R.B., 969 F.2d 1263, 1268-69 (D.C.Cir.1992) (in interpreting collective bargaining agreement with a "zipper" clause where terms of the agreement are ambiguous, past practice "may be the best evidence of [the parties'] intent in using a particular term").
 Ferryman's other contention--that the agreement, if ambiguous, should have been construed against its authors, without looking to extrinsic evidence--is equally unsound. First, the Fund is not the author of the CBA, but a third party beneficiary. Second:
 We recognize that interpreting a document against the party that supplied the language is not an unusual tool in common law contract interpretation, but to the extent it may assist in determining the intent of the parties, caution must be exercised when applying this doctrine to a labor contract.
 Northwest Administrators, Inc. v. B.R. Inc., 813 F.2d 223, 226 (9th Cir.1987). We are not required to construe a collective bargaining agreement against its drafters, and even were we to choose to do so, we first would have to find (a) that the Fund was responsible for the disputed terms, and (b) that construing the agreement against the Fund both would be helpful in determining the intent of the parties and would promote the policies underlying ERISA. Id. Ferryman fails to show that any of these factors apply here.
 B
 Ferryman argues that it is inappropriate to rely on his past practice in construing the agreement because his past actions were "not knowing, were not unequivocal, and did not occur for a sufficient amount of time to indicate a mutually agreed upon practice," citing Hudson Pulp & Paper Corp., 53 Lab.Arb.Rep. (BNA) 845, 848 (1969). Hudson is inapposite. Even if Hudson represents an accurate statement of the law in this circuit, the requirements it sets out are to be used to determine when past practice of a party creates a binding obligation "[i]n the absence of a written agreement." Id. Here, there is a written agreement--the CBA. Past practice is relevant only to determine the intent of the parties, as an aid to construing an agreement that is not silent on the issue, but merely ambiguous.[2]
 In this circumstance, the past practice of the parties may be considered, and indeed, is "to be given great weight." Laborers Health & Welfare Trust v. Kaufman & Broad, Inc., 707 F.2d 412, 418 (9th Cir.1983); see also Santa Monica Culinary Welfare Fund v. Miramar Corp., 920 F.2d 1491, 1494 (9th Cir.1990), cert. denied, 111 S.Ct. 2855 (1991); N.L.R.B. v. Merrill & Ring, Inc., 731 F.2d 605, 607 (9th Cir.1984). To discern the intent of the parties, we may properly look not only to Ferryman's behavior, but to the practice of his predecessor (who actually negotiated the contract), and to that of other, similarly situated, employers. See Operating Engineers Pension Trusts, 911 F.2d at 1352.
 CONCLUSION
 The collective bargaining agreement is ambiguous as to when Ferryman should begin to make payments into the Fund for new employees. It is therefore proper to look outside the four corners of the contract to interpret it, and the extrinsic evidence compels the conclusion that the CBA obligates Ferryman to begin making payments into the Fund from the date of hire of an employee. The judgment of the district court is AFFIRMED, and the case is REMANDED for an award to the Fund of attorneys fees incurred in the appeal. See Southwest Administrators, Inc. v. Rozay's Transfer, 791 F.2d, 769, 778 (9th Cir.1986) (fee award mandatory).
 AFFIRMED and REMANDED.
 
 
 
 *
 The Honorable William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The Trust also argues, correctly it seems, that "review period" cannot possibly be the same thing as the "probationary period,"--at least not if it also is the same as the eligibility period, as Ferryman contends. This is so because the Trust evidently is able to change the eligibility period (the amount of time an employee must work before he is able to receive benefits) regardless of any language in the CBA
 
 
 [2]
 Ferryman's discussion of Aluminum Body Corp., 63 Lab.Arb.Rep. 281 (1974) is equally unilluminating. That case did not involve a dispute over an ambiguous contract; it concerned the question whether the company's past practice could create a binding obligation where the contract at issue unambiguously imposed no such obligation