PAPER, ALLIED–INDUSTRIAL CHEMICAL AND ENERGY WORKERS INTERNATIONAL UNION, LOCAL 8–192, AFL–CIO, Plaintiff—Appellant,

v.

TXI RIVERSIDE CEMENT CO., Defendant—Appellee.

No. 05–56386.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 2007.

Filed June 19, 2007.

Glenn Rothner, Esq., Bernhard Rohrbacher, Esq., Rothner, Segall & Greenstone, Pasadena, CA, for Plaintiff–Appellant.

William James Tebbe, Esq., Musick, Peeler & Garrett, Los Angeles, CA, for Defendant–Appellee.

Before: THOMAS and GOULD, Circuit Judges, and CHESNEY *, District Judge.

### MEMORANDUM **

Paper, Allied–Industrial Chemical & Energy Workers International Union, Local 8–192 ("PACE"), appeals the district court's dismissal of its complaint for failure to state a claim. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we reverse and remand. Because the parties are familiar with the facts and procedural history, we do not recount them here.

We review dismissals under Federal Rule of Civil Procedure 12(b)(6) de novo. *Zimmerman v. City of Oakland,* 255 F.3d 734, 737 (9th Cir.2001).

"The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 567–68, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). The Supreme Court has further explained that

The Congress, however, has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that

---

* The Honorable Maxine M. Chesney, Northern District of California, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

covers the asserted dispute. *Doubts should be resolved in favor of coverage. United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) (emphasis added); *see also AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

Whether Riverside Cement Company ("RCC") agreed to arbitrate this dispute is a matter of contract interpretation. *Operating Engineers Local Union No. 3 v. Newmont Mining Corp.,* 476 F.3d 690, 692 (9th Cir.2007). "To ascertain the meaning of this collective bargaining agreement, we first examine its express written terms." *Northwest Administrators Inc. v. B.V. & B.R. Inc.,* 813 F.2d 223, 225 (9th Cir.1987). " '[W]here a contract's meaning is not clear on its face, its interpretation depends upon the parties' intent at the time it was executed, which is an issue for the trier of fact.' " *Arizona Laborers, Teamsters and Cement Masons Local 395 Health and Welfare Trust Fund v. Conquer Cartage Co.,* 753 F.2d 1512, 1515 (9th Cir.1985) (quoting *Laborers Health & Welfare Trust Fund v. Kaufman & Broad,* 707 F.2d 412, 418 (9th Cir.1983) (citations omitted)). "When the operation of an ordinary contract is not clear from its language, a court generally may consider extrinsic evidence to determine the intent of the parties in including that language." *Id.* at 1517 (citing 3 *Corbin on Contracts* § 536, 27–28 (1960)). "That principle is applied with even greater liberality in the case of a collective bargaining agreement." *Id.* "In ascertaining the intent of the parties to a collective bargaining agreement, 'the trier of fact may look to the circumstances surrounding the contract's execution, including the preceding negotiations.... It may also consider the parties' conduct subsequent to contract formation ... and such conduct is to be given great weight.' " *Id.*

at 1517–18 (quoting *Laborers Health & Welfare Trust Fund,* 707 F.2d at 418 (citations omitted)). "A district court should also 'consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements.' " *Id.* at 1518 (quoting *Kemmis v. McGoldrick,* 706 F.2d 993, 996 (9th Cir.1983) (citing *Transportation–Communication Employees Union v. Union Pacific Railroad Co.,* 385 U.S. 157, 160–61, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966))); *see also Hendricks v. Airline Pilots Association International,* 696 F.2d 673, 676 (9th Cir.1983). "As we have emphasized, when an agreement's meaning is not clear on its face and contrary inferences as to intent are possible, there exists an issue of material fact...." *Id.*

While a collective bargaining agreement ("CBA") is a contract, it also must be construed in light of the Labor Management Relations Act, 29 U.S.C. §§ 141–187. *See Northwest Administrators Inc.,* 813 F.2d at 226 ("A collective bargaining agreement is governed by the detailed provisions of the Labor Management Relations Act, 29 U.S.C. §§ 141–187, and ERISA. It is not 'governed by the same old common-law concepts which control ... private contracts.' ") (quoting *Transportation–Communication Employees Union,* 385 U.S. at 160–61, 87 S.Ct. 369).

Here, the parties dispute the meaning of the term "employees" in the CBA and whether the benefit plans referred to in Appendix B, Section 7, include the retiree benefit plan. While the CBA clearly distinguishes between employees based on their role and title, it does not as clearly distinguish between employees based on their time of employ. Indeed, the phrase *"employed* by the employer"—which is used to describe who is covered—is susceptible of meaning both currently "em-

ployed" and previously "employed." Had RCC intended to include only *current* employees, it could have easily used that phrase, which it used elsewhere in the CBA. For instance, the drug-testing policy in Section 5 of Appendix C refers to "Current Employees."

Likewise, Appendix B, Section 7's reference to benefit plans could plausibly be read to include the retiree benefit plan. First, Section 7 says it includes all benefit plans, including but not limited to those listed in Appendix B. But there are no other benefit plans listed anywhere in the CBA. Second, the retiree plan meets the definition of plans referred to in Section 7 since it is a "benefit plan" that was "negotiated between the parties."

As a general matter, "a union [does not lose] all interest in the fate of its members once they retire." *United Steelworkers v. Canron*, 580 F.2d 77, 81 (3d Cir.1978) (quoting *Rosen v. Public Service Electric & Gas Co.*, 477 F.2d 90, 94 n. 8 (3d Cir. 1973)). It is therefore not inconceivable that a union and an employer would seek to enter a CBA covering both current and retired employees. While the terms of the agreement do not speak specifically of "retired" employees, neither does it explicitly exclude them, contrary to RCC's claim. In sum, it is at least plausible that the CBA was intended to cover both current and former employees. When there is any reasonable dispute, the Supreme Court instructs that the policies embodied by the Labor Management Relations Act are best furthered when courts err on the side of finding coverage. *Warrior & Gulf Navigation Co.*, 363 U.S. at 582–83, 80 S.Ct. 1347; *see also Canron*, 580 F.2d at 82 (finding coverage under the CBA when "[t]he parties reasonably differ as to its meaning").

Therefore, we conclude that the district court erred in dismissing the complaint.

We remand to allow the parties to develop a complete factual record and to present appropriate evidence to the district court as to the meaning of the contract.

**REVERSED AND REMANDED.**